**UNITED STATES**

v.

**Airman J. T. MERRIWEATHER, Jr., FR 409–06–8487, United States Air Force.**

**ACM 23280.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 4 Sept. 1981.

Decided 29 March 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain William H. Lamb.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before POWELL, KASTL and MAHONEY, Appellate Military Judges.

## DECISION

KASTL, Judge:

The accused was convicted of disrespectful behavior toward two United States Navy commissioned officers, in violation of Article 89, Uniform Code of Military Justice [hereinafter, U.C.M.J.], 10 U.S.C. § 889. Holding that the two Navy officers were not *the accused's* superior officers for purposes of Article 89, we disapprove those findings of guilty; however, we approve findings of guilty of the lesser included offenses of disorderly conduct, in violation of Article 134, U.C.M.J., 10 U.S.C. § 934.[1]

### I

Following an affray at the Airport Disco in Olongapo City, Republic of the Philippines, the accused was treated for injuries at the Cubi Point Naval Air Station medical clinic. The two alleged instances of disrespect, words of racial and nationalistic insult toward a Navy lieutenant and a lieutenant commander, occurred during his two hour stay. The accused asserts before us that the military judge erroneously over-

---

1. Tried by a general court-martial consisting of members, the accused was also found guilty of various assaults, threats, and the use of pro-voking words, in violation of Articles 117, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 917, 928, 934.

ruled a motion to dismiss these offenses at trial for failure to state offenses.[2]

This appears to be a case of first impression. In analyzing whether findings of guilty under Article 89 should be sustained, we begin by quoting the relevant words of the Manual for Courts-Martial:

It is not necessary that the "superior commissioned officer" be in the execution of his office at the time of the disrespectful behavior. As defined by Article 1(5), a "superior commissioned officer" is a commissioned officer who is superior in rank or command. With respect to a person who is a member of one armed force, a commissioned officer of another armed force who is duly placed in the chain of command over that person is, within the meaning of Article 89, "*his* superior commissioned officer"; but an officer of another armed force would not be "*his* superior commissioned officer" merely because of higher rank. The officer toward whom the disrespectful behavior is directed need not, however, be in the chain of command over the accused if both are members of the same armed force and the officer is superior in rank, but not inferior in command, to the accused. [emphasis in original].

Manual for Courts-Martial, 1969 (Rev.), paragraph 168.

Although we find no case law directly on point, two lines of cases are helpful: (1) those addressing the relationship of superior to subordinate; and (2) those discussing the superior-subordinate relationship between members of different services under similar sections of the Code.[3]

The rule distilled from the first group of cases is this: The relationship required is that marked by actual command between the superior and subordinate; the word "command" is used in its everyday sense.

In *United States v. Hunt,* 22 C.M.R. 814 (A.F.B.R.1956) *pet. denied,* 22 C.M.R. 331, an Air Force Board of Review considered whether an accused, a former airman serving confinement imposed by court-martial at an Army disciplinary barracks, remained subject to military law. Approving the accused's conviction for disrespect to an Air Force officer assigned to that facility, the Board traced military law back to Colonel Winthrop and found that the officer in question could indeed be a superior officer to a civilian within the purview of Article 89. The board cautioned that:

It is well to point out that this determination does not have any wide implications. *There is no superior-subordinate relationship between an officer and civilian in the absence of facts showing that the officer is actually in command of the civilian and that the incident arose out of such command relationship* [emphasis added].

*United States v. Hunt, supra* at 819.

On a similar fact situation arising out of Article 90, 10 U.S.C. § 890, the Court of Military Appeals in *United States v. Nelson,* 14 USCMA 92, 33 CMR 305 (1963) upheld military jurisdiction over a sentenced prisoner in custody of the armed forces. The Court commented:

Assuming, without deciding, there is no relationship of rank between a discharged prisoner and the confinement authorities, there is definitely a "command" relationship between them ... The original pattern of the Uniform Code indicates that Congress intended the word "command" be given its ordinary, dictionary meaning

---

**2.** The military judge made specific findings of fact as to these offenses. He found that the accused could be considered under Navy authority for Article 89 purposes since he was lawfully in Navy custody and the officers were performing emergency medical care relating to that status. In the alternative, the judge believed that Article 89 offenses could be found since the accused was in a geographic area where the Navy had primary or shared law enforcement functions and the officers were performing duties arising from the accused's disorder. In regard to the accused's language at the medical clinic, we are not persuaded that the military judge's rationale brings this accused within the ambit of Article 89.

**3.** We see no distinction in the term superior officer as used in Article 89 and the same or similar terms used in other articles. *United States v. Hunt,* 22 C.M.R. 814, 819 (A.F.B.R. 1956), *pet. denied* 22 C.M.R. 331.

of authority to exercise control over the conduct and duties of another.

*United States v. Nelson, supra* at 307.

In the second group of cases, infractions between members of different services have arisen in the Coast Guard under similar articles of the UCMJ. In *United States v. Johnson*, 4 C.M.R. 496 (C.G.B.R.1952), the Coast Guard Board of Review evaluated a charge laid under Article 91, 10 U.S.C. § 891 alleging that a coastguardsman used disrespectful words toward a Navy shore patrol petty officer in the execution of his office and later assaulted two members of the Navy shore patrol. The Board opined:

> Since the accused and the victim were members of different armed forces, the shore patrol officer was *not* the accused's superior petty officer for the purposes of Article 91, merely because of a higher rating (emphasis in original).

*United States v. Johnson, supra* at 498. *See also United States v. Rio Poon*, 26 C.M.R. 830 (C.G.B.R.1958).

■ On the facts of this case, and based on limited precedent we have discovered, we find that neither of the two Navy officers was, as to this accused, "his superior commissioned officer" within the meaning of Article 89.[4] This is not a case where the accused was duly placed under the command of Navy officers, such as is true in a unified or joint command. To the contrary, the accused was merely present in the Navy clinic, for approximately two hours, while receiving emergency treatment. We cannot say that such temporary treatment triggered a command relationship. *United States v. Hunt* and *United States v. Nelson*, both *supra*. Accordingly, we find an insufficient nexus to provide the superior-subordinate relationship required by the Manual, *supra*. *United States v. Johnson, supra*. *See also, United States v. Ramos*, 15 C.M.R. 455, 459 (A.B.R.1954).

■ We must not be understood as condoning the racial and nationalistic slurs of this accused to the two officers. Although we discern no offense within the meaning of Article 89, we have no hesitation in approving the lesser included offenses of disorderly conduct, proscribed by Article 134. *United States v. Patterson*, 14 U.S.C.M.A. 441, 34 C.M.R. 221 (1964); *United States v. Banks*, 7 M.J. 501, 503 (A.F.C.M.R.1979).

II

■ The accused further asserts that the military judge erroneously overruled a defense motion based on a defective pretrial advice. We disagree. *United States v. Hardin*, 7 M.J. 399, 405 (C.M.A.1979); *United States v. Denniston*, 27 C.M.R. 721, 726 (A.B.R.1959).

III

■ Finally, the accused claims that the military judge erred by not declaring a mistrial where a prosecution rebuttal witness testified as to the accused's reliance on his right to counsel. Analyzing the record, we are convinced that there was no fair risk of harm to the accused and that he was not prejudiced by the occurrence. *United States v. Grissom*, 1 M.J. 525, 527 (A.F.C.M.R.1975); *United States v. McBride*, 50 C.M.R. 126, 129–130 (A.F.C.M.R.1975). In particular, we note that the matter was not affirmatively offered by the Government and, on a fair reading of the record, arose through inadvertence. *See generally, United States v. Hickman*, 10 U.S.C.M.A. 568, 28 C.M.R. 134, 136 (1959).

IV

■ The accused was sentenced to a bad conduct discharge, confinement at hard labor for 24 months, forfeiture of $300.00 per month for 24 months, and reduction to airman basic. Based upon the error discussed above in I, we approve only so much of the findings of guilty of Specifications 1 and 2 of Additional Charge I as finds the accused

---

4. The only other authority we have located is a 1922 Navy decision upholding a conviction under the general article of an American accused found guilty of disrespectful language and deportment toward a Turkish officer. C.M.O. 10, 1 Compilation of Court-Martial Orders 1916–1937, page 813.

was guilty of disorderly conduct, in violation of Article 134, U.C.M.J. We approve only so much of the sentence as extends to a bad conduct discharge, confinement at hard labor for 15 months, forfeiture of $300.00 per month for 15 months, and reduction to airman basic.

The findings of guilty and the sentence, both as modified herein, are

AFFIRMED.

POWELL, Senior Judge, and MAHONEY, Judge, concur.