**UNITED STATES**

v.

**Michael P. WHITE, 026–46–6974, Hull Technician Fireman Recruit (E–1), U.S. Navy.**

**NMCM 92 1751.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 9 April 1992.

Decided 31 Jan. 1994.

Lt Franklin J. Foil, JAGC, USNR, Appellate Defense Counsel.

Capt Michael K. Lambert, Appellate Government Counsel.

Before MOLLISON, JONES and WELCH, Senior Judges.

MOLLISON, Senior Judge:

The principal issues in this appeal from a special court-martial conviction are: (1) whether a Navy enlisted servicemember may commit the offense of disrespect to a superior noncommissioned officer (NCO) when the NCO is a member of another armed force; (2) whether a plea of guilty to escape from custody is provident when the fleeing accused is pursued by his custodian and pursuit is not shaken off; and, (3) whether a violation of the Hawaii "open container law" may be tried by court-martial under the Federal Assimilative Crimes Act, 18 U.S.C. § 13, and Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.

We conclude: (1) a Navy enlisted may commit the offense of disrespect to a superior NCO of another armed force when the NCO is in a position of authority over the accused; (2) a plea of guilty to escape from custody is improvident when the fleeing accused is pursued by his custodian and pursuit is not shaken off, however, a finding of guilty to the lesser included offense of attempted escape from custody may be entered under such circumstances; and, (3) a violation of the Hawaii "open container law" may be tried by court-martial under the Federal Assimilative Crimes Act and Article 134, UCMJ.

Pursuant to his pleas of guilty, the appellant was found guilty of 12 violations of the UCMJ.[1] All charges followed appellant's apprehension by U.S. Air Force security police at the main gate of Hickam Air Force Base, Oahu, Hawaii. A military judge sentenced the appellant to confinement for 75 days, forfeiture of $520.00 pay per month for three

---

1. The appellant was found guilty of disrespect to NCOs, failure to obey a lawful order not to consume alcoholic beverages while under the age of 21 in the State of Hawaii, escape from custody, making a false official statement, drunk driving, assault and battery, wrongfully possessing opened containers of alcohol in a motor vehicle, drunk and disorderly, and wrongfully communicating a threat, in violation of Articles 91, 92, 95, 107, 128, and 134, UCMJ, 10 U.S.C. §§ 891, 892, 895, 907, 928, 934.

months, and a bad-conduct discharge. The convening authority approved the sentence without modification.

The appellant's case is now before this Court for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866. This Court may affirm such findings of guilty and such part of the sentence as it finds correct in law and fact and determines on the basis of the entire record should be approved. UCMJ art. 66(c), 10 U.S.C. § 866(c). This Court may hold a finding or sentence incorrect on an error of law only if the error materially prejudices the substantial rights of the appellant. UCMJ art. 59(a), 10 U.S.C. § 859(a).

The appellant filed seven assignments of errors.[2] All are without merit and will not be discussed further. *United States v. Teters*, 37 M.J. 370 (C.M.A.1993); *Weiss v. United States*, — U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994). The Court specified three additional issues for briefing by the parties.[3]

These issues pertain to the appellant's pleas of guilty to three specifications alleging disrespect to superior NCOs in violation of Article 91, UCMJ, 10 U.S.C. § 891, one specification alleging escape from custody in violation of Article 95, UCMJ, 10 U.S.C. § 895, and one specification alleging a violation of Hawaii's "open container law," incorporated in Article 134 by means of the Federal Assimilative Crimes Act. Discussion of these issues follows.

### The Material Facts..

The military judge examined the appellant on the factual basis of his guilty pleas in accordance with *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), and Rule for Courts–Martial (R.C.M.) 910, Manual for Courts–Martial (MCM), United States, 1984.[4] Based on that examination, it appears the appellant is a Navy enlisted servicemem-

2. I. THE MILITARY JUDGE ERRED BY FAILING TO FIND CHARGE VII, SPECIFICATION 2, DRUNK AND DISORDERLY CONDUCT MULTIPLICIOUS FOR FINDINGS WITH THE REMAINING OFFENSES, SINCE THE REMAINING OFFENSES WERE THE BASIS FOR THE DRUNK AND DISORDERLY CONDUCT. (CITATIONS OMITTED.)

II. CHARGE VII, SPECIFICATION 1, WRONGFULLY POSSESSING AN OPEN CONTAINER OF ALCOHOL IN A MOTOR VEHICLE WAS MULTIPLICIOUS FOR FINDINGS WITH THE OFFENSE OF DRIVING WHILE DRUNK SINCE THEY BOTH AROSE FROM THE SAME TRANSACTION, AND BOTH OFFENSES WERE DESIGNED TO PROTECT THE SAME SOCIETAL NORM OF PREVENTING PERSONS FROM DRINKING WHILE DRIVING. (CITATION OMITTED.)

III. CHARGE II, FAILURE TO OBEY A LAWFUL ORDER BY DRINKING UNDER THE LEGAL AGE WAS MULTIPLICIOUS FOR FINDINGS WITH THE OFFENSES OF DRUNK AND DISORDERLY CONDUCT, DRIVING WHILE DRUNK AND POSSESSING AN OPEN CONTAINER OF ALCOHOL IN A MOTOR VEHICLE. (CITATION OMITTED.)

IV. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS NOT APPOINTED TO A FIXED TERM OF OFFICE. (CITATION OMITTED.)

V. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATION OMITTED.)

VI. THIS COURT DOES NOT HAVE POWER TO REVIEW THIS CASE BECAUSE ITS

JUDGES ARE NOT APPOINTED TO A FIXED TERM OF OFFICE. (CITATION OMITTED.)

VII. THIS COURT HAS NO POWER TO REVIEW THIS CASE BECAUSE ITS JUDGES ARE DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATION OMITTED.)

3. I. WHETHER THE APPELLANT'S PLEAS OF GUILTY TO THE SPECIFICATIONS OF CHARGE I ALLEGING DISRESPECT TO NON-COMMISSIONED OFFICERS WERE PROVIDENT WHEN THE OBJECTS OF HIS DISRESPECT WERE NONCOMMISSIONED OFFICERS IN ANOTHER ARMED FORCE?

II. WHETHER THE APPELLANT'S PLEA OF GUILTY TO SPECIFICATION 1 OF CHARGE III, ALLEGING ESCAPE FROM CUSTODY, IS PROVIDENT INASMUCH AS IT APPEARS FROM THE RECORD APPELLANT WAS PURSUED AND THE PURSUIT WAS NOT SHAKEN OFF?

III. WHETHER SPECIFICATION 1 OF CHARGE VII, ALLEGING A VIOLATION OF THE STATE OF HAWAII "OPEN CONTAINER" LAW AND THE FEDERAL ASSIMILATIVE CRIMES ACT, STATES AN OFFENSE, AND IF SO, WHETHER THE PLEA PROVIDENCE INQUIRY SUPPORTS THE FINDING OF GUILTY THERETO?

4. The factual basis for the pleas was established in part on the appellant's personal recollection and in part on police reports he had read. See *United States v. Luebs,* 20 U.S.C.M.A. 475, 43 C.M.R. 315 (1971); *United States v. Butler,* 20 U.S.C.M.A. 247, 43 C.M.R. 87 (1971).

ber of the pay grade E–2. While intoxicated one evening, the appellant drove a motor vehicle to the main gate of Hickam Air Force Base, Oahu, Hawaii, whereupon he was apprehended for drunk driving by a U.S. Air Force security policeman and was taken into a nearby guard shack. Having determined to flee, the appellant pushed the apprehending policeman aside and ran back to his vehicle with the policeman in pursuit. The appellant was unable to restart his vehicle because the security police had confiscated his ignition keys. A struggle ensued and the appellant was placed in handcuffs. In the course of events the appellant directed obscenities and profanity toward three individuals whom the appellant knew to be U.S. Air Force NCOs and base security policemen. The appellant's vehicle had three opened, crushed aluminum beer cans on the front floorboard, passenger side.

Keeping an open container of intoxicating liquor in a motor vehicle on a public street is a "violation" under Hawaii law. *Haw.Rev. Stat.* § 291–3.3 (1991). The military judge informed the appellant of the elements of the "open container" offense, and the appellant admitted the Hawaii statute was in effect on the relevant date and that he was obliged to obey this law. The military judge's recitation of the elements, however, did not include any element dealing with the Federal Assimilative Crimes Act or the legislative jurisdiction of Hickam Air Force Base. The parties discussed the legislative jurisdiction of an area not aboard Hickam Air Force Base in connection with a different offense, but nothing else was said by the military judge, counsel, or the appellant respecting the jurisdiction of Hickam, itself.

*Discussion.*

The military judge may not accept improvident pleas of guilty. UCMJ art. 45, 10 U.S.C. § 845. "[A] provident plea of guilty is one that is knowingly, intelligently, and consciously entered and is accurate and consistent, both factually and legally." *United States v. Newsome,* 35 M.J. 749 (N.M.C.M.R. 1992), *aff'd summary disposition,* 38 M.J. 464 (C.M.A.1993). A Court of Military Review will not reject a plea of guilty unless there is on the record a substantial basis in law or fact for questioning the guilty plea. *United States v. Prater,* 32 M.J. 433 (C.M.A. 1991).

The appellant now contends there is a substantial basis in law and fact for questioning his pleas of guilty to the offenses mentioned above. The appellant asserts the pleas of guilty to the Article 91 offenses of disrespect are legally improvident because there can be no such offense by an enlisted servicemember of one armed force against noncommissioned officers of another. The appellant asserts that his plea of guilty to the offense of escape from custody is improvident because he was immediately pursued by security police and pursuit was not shaken off, citing Manual for Courts–Martial (MCM), United States, 1984, Part IV, ¶ 19c(4). Finally, he asserts the plea of guilty to the specification alleging a violation of the Hawaii motor vehicle code is improvident because: (1) the specification fails to state an offense, viz., a "violation" is not a crime and cannot be assimilated into federal law under the Federal Assimilative Crimes Act; (2) the record fails to establish the legislative jurisdiction of Hickam Air Force Base which is prerequisite to the application of the Federal Assimilative Crimes Act; and, (3) state laws respecting alcohol beverage control have been preempted on military installations by 50 U.S.C. app. § 473, which authorizes the Secretary of Defense to promulgate regulations governing the sale, consumption, and possession of alcoholic beverages at or near military bases.

## 1. Disrespect to NCOs of Another Armed Force?

Article 91 of the Code provides:

Any warrant officer or enlisted member who—

(1) strikes or assaults a warrant officer, noncommissioned, or petty officer, while that officer is in the execution of his office; or

(2) willfully disobeys the lawful order of a warrant officer, noncommissioned officer, or petty officer; or

(3) treats with contempt or is disrespectful in language or deportment toward a warrant, noncommissioned officer, or

petty officer while that officer is in the execution of his office; shall be punished as a court-martial may direct.

The question of whether an accused of one armed force violates Article 91 when the object of his conduct is an NCO or petty officer of another armed service has been considered by our Coast Guard brethren. In *United States v. Johnson*, 4 C.M.R. 496, 1952 WL 2813 (C.G.B.R.1952), the Coast Guard Board of Review stated in dicta that a Navy petty officer was not the superior petty officer of a Coast Guard enlisted for Article 91 purposes merely because of a higher rank. The Navy petty officer concerned was a shore patrolman and was apparently apprehending Johnson for being drunk and disorderly in uniform in a public place in Long Beach, California. However, in *United States v. Balsarini*, 36 C.M.R. 809, 1965 WL 4811 (C.G.B.R.1965), *cited with approval in United States v. Ransome*, 1 M.J. 1005 (N.C.M.R.1976) (dicta), the Coast Guard Board of Review held that a Navy petty officer could under appropriate circumstances be the superior petty officer of an enlisted of another armed service. Balsarini was a Coast Guard seaman apprentice confined at a Navy brig. While there, he assaulted a Navy petty officer on the brig staff. A special court-martial convicted him of assaulting a superior petty officer in the execution of his office. On appeal, Balsarini contended he could not violate Article 91 because a Navy petty officer cannot be the superior petty officer of a Coast Guard enlisted. After reviewing the curious legislative history of Article 91, the Board concluded that Article 91 does not require a superior-subordinate relationship and that language in the specification respecting a superior-subordinate relationship was surplusage. The Board held in any case the Navy petty officer was superior *in command*, if not *in rank*, to Balsarini and "that a petty officer of any branch of the armed forces performing duties at a military prison is, with relation to any enlisted member of an armed force who is a prisoner there, 'his superior petty officer' for the purposes of" Article 91. *Balsarini*, 36 C.M.R. at 812–13.

■ The President has also expressed in the current edition of the Manual for Courts–Martial the view that the superior-subordinate relationship is not an element of an Article 91 offense. MCM, 1984, Part IV, ¶ 15c(1). The "drafters'" analysis to the Manual echoes this view. MCM, 1984, Part IV, ¶ 15c(1) Analysis. While the views of the President in promulgating the Manual and the "drafters'" analysis of the Manual are not binding on this Court in fulfilling our responsibility to interpret the elements of the substantive offenses, those views and that analysis are important. *United States v. Mance*, 26 M.J. 244, 252 (C.M.A.1988), *cert. denied*, 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988).

■ We confess some skepticism about the concept that one can be insubordinate to someone who is not a superior, however, we have no occasion here to contradict the long-standing opinion of the Coast Guard Board in *Balsarini*, the dicta of this Court in *Ransome*, or the President's current views that disrespectful language toward an NCO may be an offense under Article 91 irrespective of a senior-subordinate relationship. Congress was informed of this potential paradox at the time it enacted the Code. *Balsarini*. Many DoD Authorization bills have been passed by Congress since the UCMJ became effective in 1951. Article 91 remains unchanged. In any event, for our purposes the plain language of Article 91 does not suggest that the accused and the object of his contempt or disrespect must be of the same armed force. *United States v. Ware*, 1 M.J. 282 (C.M.A. 1976) (citing cases) (a plain and unambiguous statute is to be applied, not interpreted).

Although the President does not have the authority to change the nature of substantive offenses under the Code, he does have the authority to prescribe maximum punishments pursuant to Article 56, and in doing so he has the discretion to discriminate among levels of culpability, ascribing to one level a greater maximum authorized sentence than another. *Cf. United States v. Henry*, 35 M.J. 136 (C.M.A.1992); *United States v. Field*, 36 M.J. 697 (A.F.C.M.R.1992) (James, J.); UCMJ art. 56, 10 U.S.C. § 856.

The President has exercised his Article 56 authority by promulgating maximum authorized punishments for the various offenses in Part IV of the Manual for Courts–Martial. Exec. Order No. 12473, 49 Fed.Reg. 17152 (1984), as amended. For example, he has prescribed a maximum authorized punishment of a bad-conduct discharge, forfeiture of all pay and allowances, and confinement for six months for disrespect to a *superior* noncommissioned or petty officer, whereas, he has prescribed a maximum authorized punishment of forfeiture of two-thirds pay per month for three months and confinement for three months for disrespect to *other* noncommissioned or petty officers. MCM, 1984, Part IV, ¶ 15e(7), (8). Thus, while the President has opined that superiority of the victim's status is not an element of this offense, he has made superiority of the victim's status a factor that aggravates the statutory offense and enhances punishment. Inasmuch as the President is free to prescribe maximum authorized punishments and choose the basis upon which such punishments may be enhanced, he is perfectly free to define for these purposes when and under what circumstances the noncommissioned or petty officer who is the object of a disrespect shall be deemed "superior" to the offender. The President has not, however, defined who is a "superior noncommissioned or petty officer" for these purposes. The question before us, then, is: Under what circumstances, if any, is a noncommissioned officer of one armed force the "superior noncommissioned officer" of an accused in another armed force for purposes of punishment enhancement under the Manual provision prescribing punishments for Article 91 offenses?

The object of Article 91 is to ensure obedience to the lawful orders of NCOs and to protect them from violence, insult, and disrespect. MCM, 1984, Part IV, ¶ 15c(1). Accordingly, Article 91 prohibits disrespect to NCOs and the willful disobedience of their orders. An NCO may issue an order for Article 91 purposes when authorized by law, regulation, or custom of the service. MCM, 1984, Part IV, ¶¶ 14c(2)(a)(ii), 15c(4). Pursu-

ant to Article 7(c) of the Code, NCOs have the authority to quell quarrels, frays, and disorders among persons subject to the UCMJ and to apprehended persons who take part in them. UCMJ art. 7(c), 10 U.S.C. § 807(c). The President has also authorized NCOs to apprehend persons subject to trial by court-martial. UCMJ art. 7(c), 10 U.S.C. § 807(c); Rule for Courts–Martial (R.C.M.) 302(b), Manual for Courts–Martial, United States, 1984. Implicit in an NCO's authority to quell quarrels, frays and disorders and to apprehend persons subject to the UCMJ is the authority to issue such orders as may be necessary and proper to exercise that authority. Article 91 serves to ensure obedience to those lawful orders and to protect the NCO from violence, insult, or disrespect while exercising such authority.

We also note that the Manual analogizes the Article 91 offenses to the Article 89 and 90 offenses of disrespect to and willful disobedience of a superior commissioned officer. MCM, 1984, Part IV, ¶ 15c(1). As to the offense of disrespect to a superior commissioned officer, ¶ 13c of the Manual explains:

> If the accused and the victim [of the disrespect] are in a different armed force, the victim is a "superior commissioned officer" of the accused when the victim is a commissioned officer and superior in the chain of command over the accused or when the victim, not a medical officer or a chaplain, is senior in grade to the accused and both are detained by a hostile entity so that recourse to the normal chain of command is prevented. The victim is not a "superior commissioned officer" of the accused merely because the victim is superior in grade to the accused.

MCM, Part IV, ¶ 13c(1)(b). By analogy, an NCO of one armed force may be the superior of an enlisted member of another armed force under similar circumstances.[5]

Based on the foregoing, and with due regard for the "rule of lenity,"[6] we hold that for Article 91 purposes an NCO is not the superior NCO of an enlisted accused of another armed force merely because the NCO is superior in rank to the accused, however,

---

5. We do not view this analogy as limiting.

6. Sutherland Stat Const §§ 59.03, 59.04 (5th ed.)

an NCO may be the superior NCO of an enlisted accused of another armed force when the NCO is in a position of authority over the accused. An NCO is in a position of authority over the accused of another armed force when the NCO is superior in the chain of command over the accused, when the NCO is senior in rank to the accused and both are detained by a hostile entity so that recourse to the normal chain of command is prevented, or when the NCO is senior in rank to the accused and is performing duties which by law, regulation, or custom of the service subject the accused to the NCO's orders, i.e., when the NCO is apprehending the accused or has the accused in custody.

■ The appellant was apprehended at the gate of Hickam Air Force Base and held in the custody of U.S. Air Force NCO security policemen. Applying the foregoing principles to these facts, we hold that at the time the appellant was subject to the NCOs' orders and that the NCOs were the appellant's superiors. When the appellant directed obscenities and profanity toward the NCOs, he was being disrespectful to his superior NCOs in violation of Article 91. Accordingly, we find no basis in law or fact on this record for questioning his guilty pleas to the specifications alleging disrespect to these superior NCOs, and we will not now reject those pleas. *Prater.*

## 2. Escape or Attempted Escape from Custody?

■ An escape from custody is not complete until the person in custody is momentarily free from restraint. If the movement toward escape is opposed, or before it is completed, an immediate pursuit follows, there is no escape until opposition is overcome or pursuit is shaken off. MCM, 1984, Part IV, ¶ 19c(3)(c), (4)(c).

The military judge's examination of the appellant on the offense of escape from custody indicates that the appellant pushed his way past his custodian and ran to his motor vehicle with the policeman in pursuit. The record suggests pursuit was not shaken off. Accordingly, there remains a substantial basis in law and fact for questioning the guilty plea to this offense. *Prater.*

While the record fails to provide a basis for a plea of guilty to escape from custody, it clearly supports a finding of guilty to the lesser included offense of attempted escape from custody in violation of Article 80, UCMJ, 10 U.S.C. § 880. Under these circumstances, we may affirm findings of guilty to that lesser included offense. UCMJ art. 59(b), 10 U.S.C. § 859(b). Accordingly, appropriate action will be taken in our decretal paragraph.

## 3. The Hawaii "Open Container Law"?

Federal laws proscribing "crimes and offenses not capital" are punishable at trial by court-martial pursuant to Article 134, UCMJ. Accordingly, Article 134 incorporates the federal law popularly known as the Federal Assimilative Crimes Act (FACA), 18 U.S.C. § 13. *United States v. Picotte,* 12 U.S.C.M.A. 196, 30 C.M.R. 196 (1961); *United States v. Mitchell,* 36 M.J. 882, 884 (N.M.C.M.R.1993); 10 U.S.C. § 934; MCM, 1984, Part IV, ¶ 60c(4).

Subsection (a) of FACA provides:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in [18 U.S.C. § 7, defining the special maritime and territorial jurisdiction of the United States], is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). The Hawaii motor vehicle code provides:

(a) No person shall keep in a motor vehicle, or on a moped when such vehicle or moped is upon any public street, road, or highway or at any scenic lookout, any bottle, can, or other receptacle containing any intoxicating liquor which has been opened, or seal broken, or the contents of which have been partially removed or fully removed, unless such container is kept in the trunk of the vehicle, or kept in some other area of the vehicle not normally oc-

cupied by the driver or passengers, if the vehicle is not equipped with a trunk. A utility or glove compartment shall be deemed to be within the area occupied by the driver and passengers.

\*    \*    \*    \*    \*    \*

(d) Any person violating this section shall be guilty of a *violation*.

Haw.Rev.Stat. § 291–3.3 (1991); Appellate Exhibit II (emphasis added). The maximum punishment for a violation of this law is a fine of $1000.[7] Haw.Rev.Stat. §§ 701–102, 701–107, 706–600, 706–605(1) & (4), 706–640(5) (1991). A defendant may be imprisoned for 30 days for contumacious nonpayment of the fine. Haw.Rev.Stat. § 706–644(3) (1991).

When the appellant was found with opened beer cans in the passenger compartment of his vehicle aboard Hickam Air Force Base, he was charged with violating the Hawaii "open container law," as assimilated into federal law under FACA and incorporated under Article 134 as a federal crime or offense not capital.

The appellant first contends his plea of guilty to this offense was improvident because only state "crimes" are assimilated by FACA, an infraction of the Hawaii "open container law" is only a "violation," and a "violation" is not a "crime." Appellant cites no authority for this proposition.

In *United States v. Carlson*, 900 F.2d 1346 (9th Cir.1990), the United States Court of Appeals for the Ninth Circuit held the Hawaii speeding statute, *Haw.Rev.Stat.* 291C–102 (1988), was not assimilated by FACA because an infraction of this statute was a "violation" and because a "violation" does not constitute a crime according to the Hawaii penal code and a Hawaii Supreme Court decision. The Ninth Circuit concluded that Hawaii's determination that a speeding violation does not constitute a criminal offense

precluded assimilation by FACA which "incorporates into federal law *only the criminal law* of the jurisdiction within which the enclave exists." *Id.* at 1348, (emphasis in original), quoting *United States v. Best*, 573 F.2d 1095, 1098 (9th Cir.1978).

■ A Court of Military Review is bound to follow precedent established by its senior courts, namely, the United States Court of Military Appeals and the United States Supreme Court. *See United States v. Jones*, 23 M.J. 301 (C.M.A.1987); *United States v. Postle*, 20 M.J. 632 (N.M.C.M.R.1985). However, the decisions of other federal courts and of state courts are generally persuasive authority only. In fact, military appeals courts already have views that diverge from their civilian counterparts on FACA issues.[8] Moreover, military appeals courts have upheld the assimilation of state traffic laws by FACA. *United States v. Rowe*, 13 U.S.C.M.A. 302, 32 C.M.R. 302 (1962) (North Carolina "hit-and-run" law); *United States v. Kline*, 21 M.J. 366 (C.M.A.1986) (Maryland statute requiring motorists to obey police officer's signal). *Carlson* notwithstanding, we are under an independent statutory obligation to determine the law as best we can and apply it faithfully to trials by courts-martial. UCMJ art. 66, 10 U.S.C. § 866. Therefore, we must determine whether the Hawaii "open container law" is assimilated by FACA and thus incorporated by Article 134.

■ "For areas 'under the exclusive or concurrent jurisdiction' of the United States, [FACA] incorporates the penal laws of the state in which that area is located." *United States v. Irvin*, 21 M.J. 184, 186 (C.M.A.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986). A federal prosecution for a violation of a state law incorporated by virtue of FACA "is not for the enforcement of the state statute but for the enforcement

---

7. A convicted defendant may also be sentenced to probation and community service. *Haw.Rev. Stat.* § 706–605 (1991).

8. *Compare United States v. Irwin*, 21 M.J. 184, 188 (C.M.A.1986) and *United States v. Picotte*, 12 U.S.C.M.A. 196, 30 C.M.R. 196 (1961) (state crime not assimilated by FACA when conduct is defined by a specific punitive article of UCMJ),

with *United States v. Debevoise*, 799 F.2d 1401 (9th Cir.1986), *United States v. Mariea*, 795 F.2d 1094 (1st Cir.1986), and *United States v. Walker*, 552 F.2d 566 (4th Cir.), *cert. denied*, 434 U.S. 848, 98 S.Ct. 157, 54 L.Ed.2d 116 (1977) (UCMJ is not "any enactment of Congress" within the meaning of FACA, and therefore a state crime is assimilated by FACA despite fact conduct may be defined by a specific punitive article of UCMJ).

of the Federal law." *United States v. Rowe*, 32 C.M.R. at 310. *See also United States v. Craig*, 19 M.J. 166 (C.M.A.1985). Whereas, a state court's interpretation of a state statute might be binding as to the elements of the offense, *see United States v. Jeffress*, 28 M.J. 409 (C.M.A.1989), the issue of whether or not a state law is assimilated by FACA involves the interpretation of a federal criminal statute, and a state's interpretation of the adopted statute is not binding on federal courts for this purpose. *Cf. Rowe*, 32 C.M.R. at 310, 311, citing and quoting *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814 (1944), and *Kay v. United States*, 255 F.2d 476 (4th Cir.), *cert. denied*, 358 U.S. 825, 79 S.Ct. 42, 3 L.Ed.2d 65 (1958). *See also United States v. Sain*, 795 F.2d 888 (10th Cir.1986) (right to jury trial was not assimilated, but proof of violation of Oklahoma "open container law" was insufficient); *United States v. Manning*, 700 F.Supp. 1001 (W.D.Wis.1988) (Wisconsin drunk driving law assimilated by FACA notwithstanding fact a first offense was punishable only by civil forfeiture and was explicitly characterized as not being a "crime").

■ The decision of the Hawaii Supreme Court noted by the Court in *Carlson* did not address the elements of the offense, nor did it purport to address FACA issues. *State v. Kailua Auto Wreckers, Inc.*, 62 Haw. 222, 615 P.2d 730, 739 n. 13 (1980) ("open burning" infractions are "violations" and not technically crimes under Hawaii penal code). We agree that the Hawaii penal code characterizes a "violation" as not being a "crime," however, it does characterize a "violation" as being an "offense." *Haw.Rev.Stat.* 701–102, 701–107 (1991). By its text, FACA assimilates "offense[s]," but makes no mention of "crimes." Thus, were we to determine the applicability of FACA on the basis of Hawaii's characterization of the Hawaii statute, we would find assimilation by FACA as equally consistent with its characterization as not. In any event, while we may give some weight to the state's characterization of its statutes, we are of the opinion that in the final analysis the application of FACA is a question of the interpretation of federal law. The responsibility to make that interpretation is ours.

We note FACA "sought to close gaps in Federal penal laws and to assure that the requirements of conduct on a Federal enclave would conform with the requirements applicable within the state in which the enclave was located." *Kline*, 21 M.J. at 368. Reiterating, the word "crime" nowhere appears in the text of FACA or in that of its predecessors. *See generally United States v. Sharpnack*, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1957) (upholding constitutionality of FACA); *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946) (Arizona offense of statutory rape not assimilated on Indian reservation under FACA because federal statute defined same offense); *Franklin v. United States*, 216 U.S. 559, 30 S.Ct. 434, 54 L.Ed. 615 (1909) (predecessor of Article 134, UCMJ, did not deprive federal district court of jurisdiction to prosecute Army officer charged with a violation of the New York Penal code and the predecessor of FACA).

What we now refer to as the Federal Assimilative Crimes Act was first enacted in 1825. 4 Stat. 115. The operative words were "offence" and "punishment." *Williams*, 327 U.S. at 721, 66 S.Ct. at 783. In 1909, Congress revised the operative words to "any act or thing ... made penal." *Id.* at 722, 66 S.Ct. at 783; 35 Stat. 1145. It made this change in order to assure that assimilation occurred only as to acts that were forbidden by law and to which a penalty attached. *Williams*, 327 U.S. at 722 & n. 24, 66 S.Ct. at 783 & n. 24. The current version of FACA was enacted in 1948. The operative words are "any act or omission ... made punishable," "like offense," and "like punishment." 62 Stat. 686. In 1988, Congress added subsection (b) to FACA and specifically provided that judicial or administrative action for a conviction for operating a motor vehicle under the influence of a drug or alcohol shall be considered a punishment under subsection (a) of FACA. 102 Stat. 4381.

■ From the foregoing, we conclude that in FACA Congress intended assimilation and enforcement of un-preempted state laws that may be termed "penal," "punitive" or "criminal," but did not intend assimilation to

turn on nomenclature or labels. *See Manning,* 700 F.Supp. at 1003 ("critical inquiry is not what is labelled as an offense but what act or omission is proscribed"). Rather, Congress intended the statute's actual character as penal to be controlling.

The word "penal" "connotes some form of punishment on [the] individual by the authority of the state. Where the primary purpose of a statute is expressly enforceable by fine, imprisonment, or similar punishment, the statute is always construed as penal." Sutherland Stat. Const. § 59.01 (5th ed.).

For whatever reason, the Hawaii legislature chose not to label speeding and "open container law" violations as "crimes." Likely, it desired to ameliorate customary collateral consequences of conviction. For example, the legislature may not have wished to stigmatize traffic violators as criminals. *See Manning,* 700 F.Supp. at 1003. Clearly, it intended that a "conviction of a violation" would not give rise to a civil disability that might attend conviction of a criminal offense. *Haw.Rev.Stat.* § 701–107(6) (1991).

Notwithstanding its label as a "violation," the Hawaii law prohibits the keeping of open containers of alcoholic beverages in passenger areas of motor vehicles on public streets, and the primary purpose of the Hawaii law is expressly enforceable by fine. The Hawaii "open container law" is not related to any particular business activity so as to suggest it is only regulatory, vice prohibitory. *See Lord v. Local Union,* 646 F.2d 1057 (5th Cir.1981), *cert. denied,* 458 U.S. 1106, 102 S.Ct. 3483, 73 L.Ed.2d 1366 (1982) (state right-to-work law not assimilated); *United States v. Marcyes,* 557 F.2d 1361 (9th Cir. 1977) (state fireworks laws were prohibitory, not just regulatory). A violation of the Hawaii "open container law" carries with it a punishment customary for violations of penal statutes. Assuming the "open container law" has not otherwise been preempted by federal law and assuming the requisite legislative jurisdiction exists for its assimilation, there is no reason why it should not be enforceable on Hickam Air Force Base as it is on the public streets leading to it. With due regard to the decision of the Ninth Circuit, we are of the view that the Hawaii "open container

law" *is* a law that punishes an "act or omission" within the meaning of FACA, and therefore it is potentially subject to assimilation by FACA and to prosecution under Article 134, UCMJ. Accordingly, we turn to the issues of jurisdiction and preemption.

We recall that FACA operates only aboard enclaves over which legislative jurisdiction is exclusively or concurrently in the federal government. *Irvin.* In *Kline,* the accused pled guilty to the offense of eluding a police officer aboard Fort Meade, Maryland, in violation of a Maryland statute, FACA and Article 134. The guilty plea examination of Kline by the military judge did not deal with the jurisdictional status of Fort Meade. However, trial counsel informed the military judge that Fort Meade was under the exclusive jurisdiction of the United States, and defense counsel agreed. The Court observed that although federal jurisdiction over the situs was an element of the crime, the accused would not have personal knowledge of it and because counsel agreed jurisdiction over the situs existed, any defect in the providence inquiry was too minor to set aside the plea. *Id.* at 367.

In *United States v. Jones,* 34 M.J. 270 (C.M.A.1992), the accused pled guilty to wrongfully inhaling an intoxicating substance and distributing same to a minor in violation of a North Carolina statute, FACA and Article 134. The offenses occurred aboard Marine Corps Air Station, New River, Jacksonville, North Carolina. During the guilty plea examination of Jones, the military judge informed him that an element of the offense was that this air station was "an area of exclusive federal jurisdiction." 34 M.J. at 272. Jones responded affirmatively when asked by the military judge whether he and his defense counsel reviewed the applicable North Carolina laws for validity. Jones also stated he had discussed with his counsel the exclusive federal jurisdiction at the air station and whether his actions violated North Carolina law. *Id.* On appeal, Jones challenged the adequacy of the guilty plea examination. The Court held:

> Admittedly, the military judge should have explained each and every element of the charged offense to the accused in a

clear and precise manner. However, his failure to do so is not reversible error if it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty. Art. 45(a), UCMJ, 10 USC § 845(a).

The record shows that appellant discussed the jurisdictional issue with defense counsel and unconditionally pleaded guilty to the state statutes being assimilated. Thus, we conclude that appellant has admitted jurisdiction and that the military judge's inquiry was sufficient to establish appellant's guilt.

34 M.J. at 272.

■ There is nothing in appellant's record of trial respecting the FACA jurisdiction of Hickam Air Force Base. There is also nothing of the nature that was found in either *Kline* or *Jones*. The appellant's admissions that the Hawaii "open container law" was valid and that he had a duty to obey it did not constitute an admission of FACA jurisdiction. Nonetheless, we believe the guilty plea of the appellant to this offense need not be rejected on account of the absence of such a discussion in this case.

Judicial notice may be taken of facts when they are not subject to reasonable dispute in that the facts noticed are either generally known or are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Mil.R.Evid. 201(b). Frequently the applicability of FACA is established at trial by means of judicial notice. *See United States v. Perry*, 12 M.J. 920 (C.M.A.1982) (memorandum opinion and order).

■ Appellate courts also have it within their power to take judicial notice of indisputable facts, including judicial notice of FACA jurisdiction on a particular base in a proper case. *Irvin*, 21 M.J. at 186; *United States v. Williams*, 17 M.J. 207 (C.M.A.1984). *See also United States v. Jackson*, 18 M.J. 403, 405 (C.M.A.1984) (Cook, Senior Judge, concurring).

■ An appellate court will not, however, take judicial notice of a factual matter so as to deprive the accused of an important right guaranteed by the Code. *Irvin*, at 186–87 & n. 8. For example, in *Williams*, the United States Court of Military Appeals declined to take judicial notice of the jurisdictional status of Fort Hood, Texas, the alleged situs of the charged kidnapping. No evidence was presented at trial on the legislative jurisdiction of the fort although it was relevant to the jurisdictional basis of the offense. A post-trial *DuBay* hearing[9] revealed that the fort was not all of the same legislative jurisdiction, the jurisdiction was not generally known, and the jurisdiction was not capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned. *Williams*, 17 M.J. at 214. The Court also observed that Williams exercised his statutory right to a trial by court members and that all factual issues concerning guilt or innocence, including any issue of territorial jurisdiction, must be submitted to the members for determination. *Id.* at 215. The Court, however, held out the possibility of using a *DuBay* hearing to establish territorial jurisdiction in a bench trial. *Id.*

There has also been reluctance to take judicial notice of FACA jurisdiction on appeal in guilty plea cases because jurisdiction may vary from base to base and even from place to place on the same base, however, the authority to take judicial notice of FACA jurisdiction exists and it has been exercised. *See Perry*, 12 M.J. at 113; *United States v. Zupan*, 17 M.J. 1039 (A.C.M.R.1984) (judicial notice taken of jurisdiction aboard Fort Sill, Oklahoma, based on a Circuit Court of Appeals decision).

The appellant pled guilty. As in *Kline*, the status of legislative jurisdiction over Hickam Air Force Base is not something about which the appellant would be expected to have personal knowledge. More importantly, the issue of the legislative jurisdiction of Hickam Air Force Base is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. We note for example that Hickam Air Force Base existed before Hawaii's admission to the Union in 1959. *E.g. United*

9. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

*States v. Bennett,* 3 C.M.R. 785 (A.F.B.R. 1952). We also note that the Hawaii Statehood Act reserved to the United States at least concurrent legislative jurisdiction over lands controlled by the United States and held for defense at the time of Hawaii's admission. Act of March 18, 1959, Pub.L. No. 86–3, § 16(b), 73 Stat. 11–12 (1959). Therefore, under the circumstances of this case, we may judicially note that the legislative jurisdiction of Hickam Air Force Base was such that FACA was operative thereon.

■■■ On the question of preemption, we recall that state law is not assimilated by FACA when the conduct is defined by a specific punitive article of UCMJ or any other federal statute. *Irvin; Picotte.* We have not been informed, nor are we aware of any Article of the Code that proscribes carrying an "open container" in a motor vehicle aboard a military installation. Nor are we called upon to consider whether the existence of a regulation prosecutable pursuant to another federal statute or pursuant to Article 92, UCMJ, 10 U.S.C. § 892, precludes prosecution of state law under FACA and Article 134.[10] The statutory authority for promulgating such federal regulations exists, *e.g.,* UCMJ art. 92, 10 U.S.C. § 892; 50 U.S.C. app. § 473, however, no such regulations have been placed before us.[11] Additionally, we note the joint service Motor Vehicle Traffic Supervision regulation, 32 C.F.R. Part 634 (1991), sets forth nothing that suggests preemption of state traffic laws. To the contrary, the intent of the services appears to be to utilize, where possible, state traffic laws assimilated pursuant to FACA. 32 C.F.R. § 634.25(e), (f) (1991). Accordingly, we do not find that assimilation of the Hawaii "open

container law" was preempted by any enactment of Congress.

Based on the foregoing, we find no substantial basis in law or fact for questioning the appellant's plea of guilty to the "open container" offense, therefore, that plea will also not now be rejected. *Prater.*

■■■ We caution, however, that the questions of FACA jurisdiction and preemption are complex. The line between the various forms of jurisdiction, e.g., proprietary and exclusive, may even pass through buildings on some bases. Resolving preemption questions requires an up-to-date knowledge of federal statutes and regulations. Accordingly, we reiterate what we said in *Mitchell:*

> [W]hen an accused pleads guilty to an Article 134 offense alleging a violation of a penal code adopted as federal law by virtue of the Assimilative Crimes Act, we advise military judges: (1) to ensure there are explicit, informed admissions by the accused on the record as to the federal legislative jurisdiction (e.g., exclusive or concurrent) of the federal enclave in question, and (2) to obtain from counsel their assurances that they have conducted a diligent search of federal criminal law, including specific punitive articles of the UCMJ, and that an applicable offense for the misconduct committed is not defined therein.

36 M.J. at 887.

### Disposition.

Only so much of the finding of guilty of Specification 1 of Charge III as finds the appellant guilty of an attempted escape from custody in violation of Article 80, UCMJ, 10 U.S.C. § 880, is affirmed. The remaining

---

10. See *United States v. Hall,* 979 F.2d 320 (3rd Cir.1992) and cases cited therein (a regulation applicable to a federal enclave promulgated pursuant to federal law is an "enactment of Congress" within the meaning of FACA and thus FACA does not apply); *United States v. Pardee,* 368 F.2d 368 (4th Cir.1966) (Secretary of Interior's traffic regulations pertaining to an area under his jurisdiction preempted state traffic laws). *But see United States v. Robinson,* 495 F.2d 30 (4th Cir.1974) (FACA operates *ex proprio vigore* and there cannot be a *."*selective assimilation" of state law by a federal agency). On the general subject of preemption of state liquor control vis-

a-vis military bases, see *North Dakota v. United States,* 495 U.S. 423, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990).

11. If such a regulation were placed before us, the guilty pleas might nonetheless be affirmed as a closely related offense, see *United States v. Hubbard,* 28 M.J. 203, 206 (C.M.A.1989); *United States v. Epps,* 25 M.J. 319, 323 (C.M.A.1987); *United States v. Felty,* 12 M.J. 438 (C.M.A.1982); *United States v. Reap,* 39 M.J. 653 (N.M.C.M.R. 1993), or by correction of the Article or statute which proscribes the accused's conduct, *Mitchell,* 36 M.J. at 886–87; R.C.M. 307(d).

findings of guilty are affirmed. The sentence has been reassessed in accordance with the principles of *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990), and *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), and upon such reassessment, the sentence as approved on review below is also affirmed.

Senior Judge JONES concurs.

WELCH, Senior Judge
(concurring/dissenting in part):

I agree with the majority opinion except as noted below.

With regard to the first assignment of error, I disassociate myself from both the majority's conclusion that the Air Force noncommissioned officer security guards were the appellant's "superior" noncommissioned officers and the stated rationale for that conclusion. My position is based on the arguments in the briefs of both the appellate defense counsel and the appellate government counsel (*i.e.,* an officer or noncommissioned officer of one armed force is the "superior" of someone in another armed force only under the circumstances stated in MCM, 1984, Part IV, ¶ 13c(1)(b)). Appellate Brief filed 30 Oct. 1993 at 2–3; Government Brief filed 29 Oct. 1993 at 2–3. *See also* MCM, 1984, Part IV, ¶ 15c(5); *United States v. Merriweather,* 13 M.J. 605, 608 (A.F.C.M.R.1982). Thus, I would set aside wording in the specifications under Charge I that describes the victims as the appellant's superiors.