**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bradley J. DEVENPORT,
Defendant–Appellant.**

No. 97–1292.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 4, 1997.

Decided Oct. 30, 1997.

Peggy A. Lautenschlager, Larry Wsalek (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Ralph A. Kalal (argued), Kalal & Associates, Madison, WI, for Defendant–Appellant.

Before CUDAHY, FLAUM, and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

In this appeal, we decide whether the Federal Assimilative Crimes Act, 18 U.S.C. § 13, assimilates a Wisconsin statute that imposes civil penalties for first offense drunk driving. We hold that it does not and therefore reverse and remand this matter with instructions to vacate the judgment below and dismiss for lack of subject-matter jurisdiction.

## I.  Background

Bradley Devenport was arrested by military police for drunk driving while he was passing through Fort McCoy, a military base in the Western District of Wisconsin. After Devenport failed to pass several field sobriety tests, the arresting officer brought him to the Provost Marshal Office and administered a breathalyzer test. The test showed Devenport to have a breath-alcohol level in excess of the statutory limit. Devenport was ultimately charged with violating two Wisconsin statutes: § 346.63(1)(a), which prohibits operation of a motor vehicle while under the influence of an intoxicant,[1] and § 346.63(1)(b), which prohibits operation of a motor vehicle by a person with a prohibited alcohol concentration.

Because the offenses occurred on a stretch of highway lying within a federal military base, federal authorities prosecuted Devenport in federal court pursuant to the Assimilative Crimes Act, which incorporates state criminal laws in federal enclaves. Devenport filed a number of pretrial motions, including a motion to dismiss for lack of subject-matter jurisdiction. According to Devenport, the district court lacked jurisdiction over his case because he was charged only with a civil offense, not a criminal offense, under Wisconsin law. The magistrate judge denied this motion, and Devenport ultimately entered a conditional plea of guilty, pursuant to Fed.R.Crim.P. 11(a)(2) and 58(a)(2), to the charge of violating Wisconsin Statute § 346.63(1)(b). The district court affirmed. Because Devenport's appeal raises only questions of law, we review the conclusions of the district court de novo. Zeigler Coal Co. v. Kelley, 112 F.3d 839, 842 (7th Cir.1997).

## II.  Assimilation of Civil Offenses under the Assimilative Crimes Act

The Assimilative Crimes Act incorporates a state's criminal laws and provides for their enforcement on federal enclaves. The Act provides:

Whoever within or upon any [federal enclave], is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, by the laws thereof in force at the time of such act or omission,

---

1. The government dismissed this charge at the time of sentencing.

shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). Although the Act on its face makes no distinction between criminal and civil punishments, it is generally understood to assimilate only a state's criminal laws. The roots of this understanding lie in the Supreme Court's decision in *United States v. Sharpnack*, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958), in which the Court reviewed the history and purposes of the various Assimilative Crimes Acts leading up to the modern version of the statute adopted in 1948. These early Acts "made applicable to [federal] enclaves the criminal laws in force in the respective States" and demonstrated "a consistent congressional purpose to apply the principle of conformity to state criminal laws in punishing most minor offenses committed within federal enclaves." *Id.* at 291, 78 S.Ct. at 295.

The modern version of the Act, like its predecessors, continues to provide that "within each federal enclave, to the extent that offenses are not preempted by congressional enactments, there shall be complete current conformity with the criminal laws of the respective States in which the enclaves are situated." *Id.* at 293, 78 S.Ct. at 295. The courts of appeals, including this court, have discussed the Assimilative Crimes Act in similar terms. *See United States v. Chaussee*, 536 F.2d 637, 643–44 (7th Cir.1976) ("[T]he purpose of the Assimilative Crimes Act ... is to supplement the Criminal Code of the United States by adopting state criminal statutes relating to acts or omissions committed within areas over which the federal government has exclusive jurisdiction ....") (quoting *United States v. Patmore*, 475 F.2d 752, 753 (10th Cir.1973)); *see also United States v. Sain*, 795 F.2d 888, 890 (10th Cir.1986) ("The Act fills in gaps in federal criminal law by providing a set of criminal laws for federal enclaves."); *United States v. Brown*, 608 F.2d 551, 553 (5th Cir. 1979) ("The purpose of the Assimilative Crimes Act (ACA) is to provide a set of criminal laws for federal enclaves by the use of the penal law of the local state to fill the gaps in federal criminal law.") (citations and internal quotation omitted).

The vast majority of prosecutions brought under the Assimilative Crimes Act have involved underlying state offenses that are clearly criminal in nature. The courts are divided on the question of whether state civil offenses may be assimilated under the Assimilative Crimes Act. *Compare United States v. Carlson*, 900 F.2d 1346, 1347 (9th Cir.1990) (Hawaii's speeding law is civil and cannot be assimilated); *and United States v. Rowe*, 599 F.2d 1319, 1320 (4th Cir.1979) (per curiam) (Virginia's state law provision allowing license suspension for refusal to take breathalyzer test is civil and cannot be assimilated); *and United States v. Golden*, 825 F.Supp. 667 (D.N.J.1993) (New Jersey's speeding law is civil and cannot be assimilated), *with United States v. Manning*, 700 F.Supp. 1001 (W.D.Wis.1988) (assimilating Wisconsin's drunk driving statute even though it provides only for civil penalties); *and United States v. White*, 39 M.J. 796, 804–05 (C.M.R.1994) (rejecting *Carlson* and assimilating Hawaii's open alcohol container law).

In *Carlson*, the Ninth Circuit considered whether Hawaii's speeding law could be assimilated under the Assimilative Crimes Act. The court first determined that "Hawaii has clearly decided that a speeding violation does not constitute a criminal offense." *Carlson*, 900 F.2d at 1347–48. Since the court believed that only state criminal offenses may be assimilated, Hawaii's characterization of the speeding offense as civil ended the inquiry. The assimilation inquiry is "rooted in an analysis of state law," and the court recognized that "our analysis of [the assimilation] question can lead to a different answer under a different state law." *Id.* at 1348. Similarly, the Fourth Circuit in *Rowe* refused to assimilate the Virginia state law provision at issue because "[t]he Supreme Court of Virginia has held that a proceeding under [the Virginia statute] is administrative and civil, not criminal, in nature." *Rowe*, 599 F.2d at 1320. The court held that "[w]e, of course, must accept this authoritative interpretation of Virginia law." *Id.*

### III. Assimilation of Wisconsin Statute § 346.63(1)(b)

█ In this appeal, the government urges us to reject the approach adopted in *Carlson*

and *Rowe* that offenses defined as civil under state law may not be assimilated by the Assimilative Crimes Act. We decline to accept this invitation.

Devenport's violation of Wisconsin Statute § 346.63(1)(b) was a civil violation, not a criminal violation. The Wisconsin legislature defines a "crime" as "conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by forfeiture is not a crime." Wis. Stat. § 939.12. Devenport's offense was a civil violation under the terms of this definition. First, Devenport could not have been sentenced to imprisonment; imprisonment becomes a sentencing option only upon the second violation of the Wisconsin drunk driving statute. Wis. Stat. § 346.65(2)(b). Second, the statute specifies that the monetary penalty imposed on first offenders like Devenport is a forfeiture, not a fine. First offenders "shall *forfeit* not less than $150 or more than $300", Wis. Stat. § 346.65(2)(a), whereas repeat offenders "shall be *fined* not less than $300 nor more than $1,000 ... ", Wis. Stat. § 346.65(2)(b) (emphasis added). Because the penalty for a first offense is only a civil forfeiture, and there is no possibility of imprisonment, Devenport's offense is not a crime under Wisconsin law. *See State v. McAllister,* 107 Wis.2d 532, 319 N.W.2d 865, 868 (1982) (acknowledging that previous convictions under § 346.63(1) may be civil or criminal); *State v. Peterson,* 104 Wis.2d 616, 312 N.W.2d 784, 786 (1981) ("[T]he legislature intended that violations of state traffic laws involving forfeitures be treated as civil offenses .... "); *see also Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984) ("The State of Wisconsin has chosen to classify the first offense for driving while intoxicated as a noncriminal, civil forfeiture offense for which no imprisonment is possible.").

▮ The government acknowledges that Wisconsin classifies Devenport's offense as a civil violation. The government argues that, even though Wisconsin defines Devenport's offense as civil, the offense may nevertheless be assimilated under the Assimilative Crimes Act because it is part of Wisconsin's uniform policy of prohibiting drunk driving.

The government distinguishes this case from *Carlson,* arguing that the speeding law in that case was only a regulatory statute whereas the Wisconsin drunk driving statute is prohibitory. Even though the punishment for the first violation of Wisconsin Statute § 346.63(1)(b) is a civil forfeiture, the government argues. that the statute's underlying policy—prohibiting drunk driving—is inseparable from the policy underlying Wisconsin's imposition of criminal sanctions on repeat offenders.

We note first that the Ninth Circuit·has denied that its approach to assimilation of state civil offenses turns on whether the underlying state law is regulatory or prohibitory. *United States v. Carlson,* 900 F.2d 1346,· 1348 (9th Cir.1990). The rule as it has developed in the Ninth Circuit is. that no civil laws may be assimilated, and only criminal laws that are prohibitory rather than regulatory may be assimilated. *Id.* The reason for refusing to assimilate regulatory criminal laws is that "a state could thereby enforce its regulatory system on the federal jurisdiction by making criminal any failure to comply with those regulations." *Id.* (quoting *United States v. Marcyes,* 557 F.2d 1361, 1364 (9th Cir.1977)). The Ninth Circuit's distinction between regulatory and prohibitory laws applies only to offenses that the state defines as criminal; it does not come into play at all with civil offenses.

Furthermore, we do not find it helpful to distinguish laws against speeding from laws against drunk driving on the grounds that the former are regulatory and the latter are prohibitory. Laws against speeding regulate the speed at which cars may lawfully be driven; they also prohibit driving at a speed above the statutory limit. Similarly, drunk driving laws regulate the amount of alcohol people may drink before getting behind the wheel; they also prohibit people from driving when they have imbibed beyond the legal limit. Incorporation of state law offenses under the Assimilative Crimes Act ought not turn on which of these linguistic formulations is adopted.

The government also contends that we should look to the substantive elements of the underlying drunk driving offense, which

are the same for first (civil) offenders as they are for repeat (criminal) offenders, rather than to the classification of the offense under state law. In the government's view, the distinction drawn by the statute between civil and criminal drunk driving only matters for sentencing purposes; the underlying conduct that Wisconsin wants to prohibit is the same. In support of this approach, the government relies on *United States v. Manning*, 700 F.Supp. 1001 (W.D.Wis.1988), which assimilated the same Wisconsin drunk driving statute at issue in this case because "[t]he graduated penalty structure mandated in Wisconsin's repeater provision does not change the nature of the offense or prohibited conduct but goes only to the question of punishment for the offense." *Id. at* 1003.

■ Although it is true that the substantive conduct underlying the civil and criminal provisions of Wisconsin's drunk driving statute is the same, the government's argument understates the significance of Wisconsin's statutory classification scheme. The Wisconsin legislature's classification of Devenport's offense as a civil offense is unambiguous and, more importantly, non-trivial. The different procedural rights that attach in criminal and civil proceedings under Wisconsin law demonstrate the importance of Wisconsin's classification scheme. For instance, under Wisconsin law a criminal defendant who pleads guilty has the right to appeal the denial of a motion to suppress evidence, a right that a defendant who pleads guilty in a civil forfeiture case lacks. *County of Racine v. Smith*, 122 Wis.2d 431, 362 N.W.2d 439, 441 (1984). *See also State v. Peterson*, 104 Wis.2d 616, 312 N.W.2d 784, 787 (1981) (holding that civil rules of pleading, not criminal rules, apply to traffic offenses punishable by civil forfeiture). The *Peterson* decision discusses at length the policies underlying the Wisconsin legislature's bifurcation of state traffic laws into criminal and civil provisions:

That the legislature intended that violations of state traffic laws involving forfeitures be treated as civil offenses is clear from the legislative history of chapter 346, Stats.1977. In adopting the Uniform Traffic Procedure Act in 1971, the legislature

amended many penalty provisions of ch. 346 to provide that any person found guilty of violating the traffic statutes would be punished by forfeiture of a sum of money (a civil penalty) rather than by fine or imprisonment or both (criminal penalties). The 1971 legislature amended the state traffic penalty provisions in this manner because it was dissatisfied with the pre-1971 scheme by which violation of many state traffic statutes constituted a crime while violation of municipal traffic ordinances (which conformed to the state traffic statutes) constituted a civil offense.... The 1971 amendments were designed to remedy this inequity by the creation of a uniform system of civil forfeiture and civil proceedings for most traffic violations whether the violation be of state traffic statutes or of local traffic ordinances.

*Peterson*, 312 N.W.2d at 786-87.

We decline to upset Wisconsin's carefully considered decision to classify certain traffic offenses as criminal and others as civil. It might be possible to craft a rule that assimilates certain state civil offenses solely for purposes of federal prosecutions under the Assimilative Crimes Act, without disturbing the "civil" nature of those offenses for purposes of enforcement actions under state law. However, even if this would not technically infringe on a state's prerogative to classify its laws as it sees fit, the suggestion that a federal court may override a state's statutory classification scheme should be avoided unless the Assimilative Crimes Act clearly demands it. We believe that such a step would go beyond the settled understanding of the scope of the Assimilative Crimes Act. The Act reflects a decision that Congress made long ago not to enact its own body of substantive criminal laws for federal enclaves, but instead to adopt the criminal laws that the government of the surrounding state saw fit to enact. *United States v. Sharpnack*, 355 U.S. 286, 289-90, 78 S.Ct. 291, 293-94, 2 L.Ed.2d 282 (1953). To extend the reach of the Assimilative Crimes Act to incorporate state offenses that the government of the surrounding state has expressly defined as

non-criminal is to stray from the course chosen by Congress.[2]

■ Furthermore, we note that our decision does not insulate first offense drunk drivers from liability when they are arrested on federal enclaves. First offense drunk driving on federal military bases may still be prosecuted under 32 C.F.R. § 634.25(f), which provides:

> In those states where violations of traffic law are not considered criminal offenses and cannot be assimilated under 18 USC, DODD ... expressly adopts the vehicular and pedestrian traffic laws of such states and makes these laws applicable to military installations....

Thus, first offense drunk drivers such as Devenport may be charged under this regulation despite the inapplicability of the Assimilative Crimes Act.[3]

■ The availability of this enforcement mechanism in the regulations removes the primary concern that motivated the district court's decision in *Manning*. The district court was appropriately concerned that if first offense drunk driving violations were not assimilated, then first offense violations on federal enclaves could never be punished.

Furthermore, a first offense violation on a federal enclave would not even count as a prior offense, and so the same offender could drink and drive on the enclave again and continually escape punishment. *United States v. Manning*, 700 F.Supp. 1001, 1004 (W.D.Wis.1988). The Department of Defense regulation cited above obviates this concern.[4]

■ As a final matter, we consider the effect of 18 U.S.C. § 13(b)(1),[5] a provision added to the Assimilated Crimes Act in 1988 that relates specifically to drunk driving offenses. The government does not expressly rely on this provision as a basis for jurisdiction; however, the government's jurisdictional statement refers to the Assimilative Crimes Act as a whole, and its brief quotes § 13(b)(1) at length. One court has stated in passing that "[t]he common sense reading of this addition is an expression of a specific congressional intent to ensure assimilation of DUI offenses, notwithstanding any decriminalization by a State." *United States v. Clinkenbeard*, 44 M.J. 577, 578 (1996). With all due respect to the *Clinkenbeard* court, we read the statute differently. Section 13(b)

---

**2.** Our decisions in *United States v. LeBlanc*, 45 F.3d 192 (7th Cir.1995), and *United States v. Lewis*, 896 F.2d 246 (7th Cir.1990), are not to the contrary. In those cases, we counted prior non-criminal convictions for drunk driving towards a sentence enhancement under the United States Sentencing Commission Guidelines. Far from constituting a judicial recharacterization of state civil offenses as criminal, these decisions instead merely applied Application Note 5 to § 4A1.2 of the Sentencing Guidelines, which stated that drunk driving offenses are sufficiently serious to count in a defendant's criminal history for purposes of the Sentencing Guidelines. *LeBlanc*, 45 F.3d at 195; *Lewis*, 896 F.2d at 250. See also *United States v. Jakobetz*, 955 F.2d 786, 806 (2d Cir.1992), *cert. denied*, 506 U.S. 834, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992) (noting Sentencing Commission's "determination that DWI offenses are of sufficient gravity to merit inclusion in the defendant's criminal history, however they might be classified under state law") (citing *Lewis*, 896 F.2d at 250). The treatment of drunk driving mandated by the Sentencing Guidelines has nothing to do with whether non-criminal offenses under state law may be assimilated under the Assimilative Crimes Act.

**3.** Devenport argues that 32 C.F.R. § 634.25(f) renders the Assimilative Crimes Act inapplicable

because the regulation constitutes controlling federal law. *See United States v. Chaussee*, 536 F.2d 637, 644 (7th Cir.1976) ("The Act has no application [to] acts or omissions [that] are made penal by federal statutes.") (citation omitted). Devenport's argument, however, flies in the face of the regulation itself, which applies "[i]n those states where violations of traffic law are not considered criminal offenses and cannot be assimilated under 18 USC...." Thus, the assimilation question under the Act must be decided prior to application of the regulation.

**4.** We recognize that this regulation only applies to military installations, and there might be other federal enclaves that may or may not be governed by similar regulations. We express no opinion as to the existence or effect of any similar regulation, as none is before us in this case.

**5.** This provision states in pertinent part, "for purposes of subsection (a) of this section, that which may or shall be imposed through judicial or administrative action under the law of a State, territory, possession, or district, for a conviction for operating a motor vehicle under the influence of a drug or alcohol, shall be considered to be a punishment provided by that law." 18 U.S.C. § 13(b)(1).

does not affect the assimilation inquiry; rather, § 13(b) expands the options available to federal judges in sentencing convicted drunk driving defendants once their offenses have been assimilated under § 13(a).

 Section 13(b) only applies to criminal DUI offenses and has no bearing on the Wisconsin civil statute at issue in this appeal. Section 13(b) provides that "that which may or shall be imposed [under state law] . . . for a *conviction* [for drunk driving] shall be considered to be a punishment provided by that law" (emphasis added). The reference to "a conviction [for drunk driving]" indicates that § 13(b) applies only when an offense has been committed that carries with it the possibility of criminal conviction under state law; it does not apply to offenses that carry only civil or administrative penalties.

Section 13(a) of the Assimilative Crimes Act directs a federal judge sentencing a convicted defendant under the Act to impose a "like punishment"—i.e., the same punishment that the defendant could receive if prosecuted under state law. Section 13(b) expands the definition of "punishment" to increase the sentencing options available to federal judges. Section 13(b) provides that each of the sentencing options ("that which may or shall be imposed") that would be available to a state judge in criminal DUI proceedings—a range that may include license suspensions as well as more traditional punishments like fines or imprisonment—"shall be considered a punishment" for purposes of the Assimilative Crimes Act. Thus, § 13(b) merely authorizes federal judges to impose the same range of penalties, under the "like punishment" clause of § 13(a), that are available in state criminal DUI proceedings.

This reading of § 13(b) is supported by the comments of Senator Biden, chairman of the Senate Judiciary Committee and sponsor of Section 6477 of the Anti–Drug Abuse Act of 1988, the provision that became 18 U.S.C. § 13(b): "In cases interpreting [the Assimilative Crimes Act], drunk driving has been found to be a crime-defining statute, but license suspensions and other non-jail sanctions have not been found to be punishments, and therefore may not be imposed." 134 Cong. Rec. 32700 (1988). Section 6477 was

enacted to "close a loophole in the law which now prevents federal judges from imposing license suspensions, alcohol education programs, and other non-jail term sanctions on persons convicted of driving under the influence." *Id.*

We conclude that as a matter of law the Assimilative Crimes Act does not assimilate Wisconsin Statute § 346.63(1)(b). We therefore reverse and remand to the district court with instructions to vacate the judgment below and dismiss this action for lack of subject-matter jurisdiction.