UNITED STATES, Appellee,

v.

Private E1 Nathaniel L. BROOKS,
United States Army,
Appellant.

ARMY 20030150.

U.S. Army Court of Criminal Appeals.

21 Nov. 2006.

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Allyson G. Lambert, JA; Major Patrick N. Leduc, JA (on brief); Colonel John T. Phelps II, JA; Lieutenant Colonel Kirsten V.C. Brunson, JA; Major Billy B. Ruhling II, JA; Captain Doug J. Choi, JA (on specified issues).

For Appellee: Colonel Steven T. Salata, JA; Lieutenant Colonel Theresa A. Gallagher, JA; Major Natalie A. Kolb, JA; Captain Michael C. Friess, JA (on brief); Lieutenant Colonel Theresa A. Gallagher, JA; Captain Edward E. Wiggers, JA; Captain Michael C. Friess, JA (on specified issues).

Before SCHENCK, ZOLPER, and WALBURN, Appellate Military Judges.

## OPINION OF THE COURT

WALBURN, Judge:

A military judge sitting as a special court-martial convicted appellant, consistent with his pleas, of disobeying a noncommissioned officer, fleeing apprehension, wrongfully possessing marijuana, wrongfully carrying a concealed weapon, and various violations of Virginia law assimilated into federal law under the Assimilative Crimes Act, 18 U.S.C. § 13 (1996) [hereinafter ACA], to wit: driving while his driver's license was suspended in violation of Va.Code Ann. § 46.2–301 (two specifications); driving in an improper direction on a one-way roadway or highway in violation of Va.Code Ann. § 46.2–806; failing to stop at a posted stop sign in violation of Va.Code Ann. § 46.2–830; reckless driving on a roadway or highway in violation of Va.Code Ann. § 46.2–852; and reckless driving on a parking lot in violation of Va.Code Ann. § 46.2–864, in violation of Articles 91, 95, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 891, 895, 912a, and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for four months, and forfeiture of $767.00 pay per month for four months, and credited appellant with thirty days of confinement credit against his sentence to confinement.[1] This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

In their initial pleadings, appellate defense counsel assert, *inter alia*, the military judge erred by failing to merge the following specifications of Charge III: Specification 4 (reckless driving on a parking lot), Specification 5 (reckless driving on a roadway or highway), Specification 6 (driving in an improper direction on a one-way roadway or highway), and Specification 7 (failing to stop at a posted stop sign). Our court specified the following four additional issues: (1) whether non-criminal traffic offenses, i.e., Specifications 6 and 7 of Charge III, can be charged under clause 3 of Article 134 pursuant to the ACA; (2) assuming, arguendo, Specifications 4 and 5 of Charge III were improperly charged under clause 3 of Article 134, UCMJ, whether this court can affirm findings of guilty to the closely-related offense of reckless driving in violation of Article 111, UCMJ, 10 U.S.C. § 911; (3) assuming, arguendo, that non-criminal traffic offenses (Specifications 6 and 7 of Charge III) cannot be charged under clause 3 of Article 134, whether this court can affirm findings of guilty to lesser-included simple disorders in violation of clause 1 or 2 of Article 134; and (4) assuming, arguendo, Specifications 4 and 5 of Charge III were improperly charged under clause 3 of Article 134, whether this court can affirm findings of guilty to lesser-included simple disorders in violation of clause 1 or 2 of Article 134.

We find appellant's initial assertion of error without merit, but hold: (1) the government improperly assimilated the state law offenses of driving in an improper direction

---

1. Appellate counsel agree that appellant is entitled to one additional day of confinement credit, and we will order such credit.

on a one-way roadway or highway (Specification 6 of Charge III) and failing to stop at a posted stop sign (Specification 7 of Charge III) because non-criminal traffic offenses may not be assimilated into federal law under the ACA; (2) appellant's misconduct in Specifications 6 and 7 of Charge III constituted part of his reckless driving; therefore, we consolidate these specifications in Specification 5 of Charge III; (3) the government improperly assimilated state law reckless driving offenses (Specifications 4 and 5 of Charge III) because those offenses are preempted by Article 111, UCMJ; and (4) appellant's guilty pleas to the state law reckless driving offenses are nevertheless provident to the closely-related offense of reckless operation of a motor vehicle in violation of Article 111. Based on our disposition of this case, we need not decide the third and fourth specified issues regarding simple disorders. We will grant appropriate relief in our decretal paragraph.

## FACTS

Late in the evening on 10 January 2003, Department of Defense gate guards stopped appellant as part of a 100 percent vehicle inspection as he drove onto Fort Eustis, Virginia. Fort Eustis is a military installation with different areas of federal jurisdiction; some are exclusively federal, while others are shared or concurrent with state jurisdiction. A gate guard asked appellant to produce his driver's license, but appellant had a suspended license and falsely told the guard he lost it. After the guard electronically verified appellant's driver's license status and confirmed that his license was suspended, the guard asked appellant to get out of his car. During a subsequent lawful pat-down by a military police officer (MP), the MP found a 9–millimeter handgun and a loaded ammunition magazine containing six bullets in appellant's jacket pocket. The MP apprehended appellant while another MP searched appellant's car. The vehicle search disclosed a small amount of marijuana and a pipe containing marijuana residue.

On 11 January 2003, the unit First Sergeant restricted appellant to post and ordered him not to drive his car. Later the same day, appellant violated these orders and drove his car off post. When appellant attempted to re-enter Fort Eustis on 11 January 2003, a MP involved in the previous night's incident recognized and detained appellant again to check his driver's license status. When the MP tried to apprehend appellant, appellant fled the scene by speeding down Washington Boulevard, the post's main thoroughfare. The MP pursued appellant in his marked police car. After avoiding a police roadblock, driving the wrong way on Washington Boulevard, running several stop signs, jumping a curb and roadway median, crossing over railroad tracks, striking a MP vehicle, speeding through several parking lots, and almost striking several pedestrians, appellant was finally apprehended at gunpoint when his car became stuck in a ditch. Based on this misconduct, the government charged appellant with the offenses listed in the jurisdictional paragraph of this opinion.

## LAW

### *Standard of Review*

■ Our court reviews a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Abbey,* 63 M.J. 631, 632 (Army Ct.Crim.App.2006) (citing *United States v. Eberle,* 44 M.J. 374, 375 (C.A.A.F.1996)). We will not disturb a military judge's acceptance of a guilty plea unless the record of trial shows a substantial basis in law and fact for questioning the plea. *United States v. Adams,* 63 M.J. 223, 226 (C.A.A.F.2006) (citing *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991)). A providence inquiry into a guilty plea must: (1) establish that the accused believes and admits he or she is guilty of the charged offenses; and (2) provide a set of factual circumstances—admitted by the accused—which objectively support the guilty plea. Rule for Courts–Martial 910(e); *United States v. Simmons,* 63 M.J. 89, 92 (C.A.A.F. 2006); *United States v. Barton,* 60 M.J. 62, 64 (C.A.A.F.2004); *United States v. Morris,* 58 M.J. 739, 742–43 (Army Ct.Crim.App. 2003).

### Assimilation and Preemption

■ The ACA "is an adoption by Congress of state criminal laws for areas of exclusive or concurrent federal jurisdiction ...." *Manual for Courts–Martial, United States* (2002 ed.) [hereinafter *MCM*], Part IV, para. 60c(4)(c)(ii). The text of the ACA provides:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title [18 USCS § 7], or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a) (1996). Thus, the ACA provides for the assimilation and federal prosecution of state law offenses that occur on a federal enclave. *United States v. Sadler,* 29 M.J. 370, 374 (C.M.A.1990) ("[T]he [ACA] permit[s] a servicemember to be tried by a court-martial for violating state penal law at a place within exclusive or concurrent [f]ederal jurisdiction.").

However, assimilation of state law offenses under the ACA is constrained by the preemption doctrine, and by how state law offenses are classified, i.e., criminal versus noncriminal offenses. First, the government may charge an assimilated state law offense under clause 3 of Article 134, "provided federal criminal law, including the UCMJ, has not defined an applicable offense for the misconduct committed." *MCM,* Part IV, para. 60c(4)(c)(ii). As explained in the *MCM:*

The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132. For example, larceny is covered in Article 121, and if an element of that offense is lacking—for example, intent—there can be no larceny or larceny-type offense, either under Article 121 or, because of preemption, under Article 134. Article 134 cannot be used to create a new kind of larceny offense, one without the required intent, where Congress has already set the minimum requirements for such an offense in Article 121.

*MCM,* Part IV, para. 60c(5)(a); *see also United States v. Robbins,* 52 M.J. 159, 162 (C.A.A.F.1999) (citing *Lewis v. United States,* 523 U.S. 155, 164–66, 118 S.Ct. 1135, 140 L.Ed.2d 271 (1998)) (discussing assimilation and preemption); *United States v. Kick,* 7 M.J. 82, 85 (C.M.A.1979) (explaining preemption).

■ Second, where Congress has not legislated with respect to the misconduct at issue, state law offenses may be assimilated under the ACA. However, the ACA "incorporates into federal law only the *criminal* laws of the jurisdiction within which the [federal] enclave exists." *United States v. Carlson,* 900 F.2d 1346, 1347 (9th Cir.1990) (internal quotes omitted). While the ACA does not distinguish "between criminal and civil punishments, it is generally understood to assimilate only a state's *criminal* laws." *United States v. Devenport,* 131 F.3d 604, 606 (7th Cir.1997) (emphasis added). The U.S. Supreme Court espoused this understanding in *United States v. Sharpnack,* 355 U.S. 286, 291–93, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958).

In *Sharpnack,* the Court discussed the history and purpose of several versions of the ACA as far back as the original Federal Crimes Act enacted in 1790, and concluded with the most recent version of the ACA enacted in 1948. The Court concluded that the ACA "made applicable to [federal] enclaves the *criminal* laws in force in the respective States" and "demonstrate[d] a consistent [C]ongressional purpose to apply the principle of conformity to state *criminal* laws in punishing most minor offenses committed within federal enclaves." *Id.* at 291, 78 S.Ct. 291 (emphasis added).[2] To underscore the

---

2. "[A] statute's title may aid in construing any ambiguities in a statute." *Berniger v. Meadow Green–Wildcat Corp.,* 945 F.2d 4, 9 (1st Cir.1991).

The ACA's title, therefore, lends additional support to the argument that Congress' intent was to limit the ACA's scope to the assimilation of crimi-

Supreme Court's conclusion in *Sharpnack,* the Seventh Circuit stated: "To extend the reach of the [ACA] to incorporate state offenses that the government of the surrounding state has expressly defined as non-criminal is to stray from the course chosen by Congress." *Devenport,* 131 F.3d at 608–09; *see also United States v. Rowe,* 599 F.2d 1319, 1320 (4th Cir.1979) (per curiam) (Virginia law allowing license suspension for breathalyzer refusal non-criminal and cannot be assimilated); *United States v. Golden,* 825 F.Supp. 667, 669–71 (D.N.J.1993) (New Jersey speeding law non-criminal and cannot be assimilated).

Furthermore, following the Ninth Circuit's conclusion in *Carlson,* 900 F.2d at 1348, "that a state statute may not be assimilated into the [ACA] when a state has determined that the statute sought to be assimilated is not criminal," our sister service court, in *United States v. Clinkenbeard,* 44 M.J. 577 (A.F.Ct. Crim.App.1996), *pet. denied,* 46 M.J. 104 (C.A.A.F.1996), set aside and dismissed three specifications that assimilated non-criminal Washington state law traffic offenses.[3] The Air Force Court of Criminal Appeals recognized:

> It is clear that the Department of Defense and the Congress of the United States have each adopted the view that a State's decriminalization of traffic offenses affects the applicability of the [ACA].
>
> . . . .
>
> [I]t is [also] clear that the Department of Defense has decided as a matter of policy that a State's legislative judgment to decriminalize traffic offenses will be respected, and that military violators will be put on the same footing as their civilian counterparts. In furtherance of that policy, the Department has provided a mechanism to ensure continued enforcement of traffic violations without unfairly penalizing violators caught on military installations with concurrent or exclusive federal jurisdiction.

*Clinkenbeard,* 44 M.J. at 578–79.

The enforcement mechanism referred to in *Clinkenbeard, id.,* is the Secretary of Defense's written policy for traffic and pedestrian control on all United States military installations. As summarized in *United States v. Boyer,* 935 F.Supp. 1138 (D.Colo.1996), the Secretary's policy "provides: (1) all state traffic offenses that are criminal shall be assimilated through the ACA; and (2) all non-criminal traffic offenses shall be adopted as the rules for traffic and pedestrian control for the specific installation and be subject to the penalty set forth in 40 U.S.C. § 318c." *Id.* at 1139–41 (adopted by *United States v. Doyle,* 237 F.3d 950, 952 (8th Cir.2001)).[4]

nal offenses. Title 18 is entitled "Crimes and Criminal Procedure." Section 13 is found in the "General Provisions" chapter of Part I, and Part I is entitled "Crimes." Furthermore, the Act is popularly referred to as the "Assimilative Crimes Act." 18 U.S.C. § 13 (1996).

**3.** For an opposing view see *United States v. White,* 39 M.J. 796, 803–08 (N.M.C.M.R.1994). In *White,* the Navy–Marine Corps Court of Military Review rejected the analysis in *Carlson,* 900 F.2d at 1346, and upheld assimilation of Hawaii's "open container law." The *White* court argued: "[D]ecisions of other federal courts and of state courts are generally persuasive authority only . . ., and a state's interpretation of the adopted statute is not binding on federal courts" for purposes of determining assimilation under the ACA. *White,* 39 M.J. at 804–05. The court further stated that "while we may give some weight to the state's characterization of its statutes, we are of the opinion that in the final analysis the application of the [ACA] is a question of the interpretation of federal law." *Id.* at 805. Finally, relying on *United States v. Manning,* 700

F.Supp. 1001, 1003 (W.D.Wis.1988), the *White* court concluded: "Congress intended assimilation and enforcement of unpreempted state laws that may be termed 'penal,' 'punitive' or 'criminal,' but did not intend assimilation to turn on nomenclature or labels." *White,* 39 M.J. at 805–06. Without gainsaying the reasoning and result in *White,* we believe a better view is the one espoused by the Air Force Court of Criminal Appeals in *Clinkenbeard,* 44 M.J. at 578–79, in which the court recognized the deference Congress and the Department of Defense afford a state's legislative decision to decriminalize traffic offenses. We find added support for this view in *Devenport,* 131 F.3d at 608, wherein the Seventh Circuit "decline[d] to upset Wisconsin's carefully considered decision to classify certain traffic offenses as criminal and others as civil." By so stating, the Seventh Circuit undercut the argument made in *Manning,* 700 F.Supp. at 1003, upon which the *White* Court relied.

**4.** The Secretary of Defense's policy, as discussed in *Boyer,* 935 F.Supp. at 1139–41, is located in 32 C.F.R. § 210.3 ("Part 210—Enforcement of

Section 318c ("Penalty for violation of rules or regulations") provided: "[W]hoever violates any rule or regulation promulgated pursuant to [40 U.S.C. § 318a] shall be fined not more than $50 or imprisoned not more than thirty days, or both." [5]

## DISCUSSION

### Non–Criminal Traffic Offenses

■ At trial, and before entering pleas, defense counsel made a motion arguing that Specifications 5, 6, and 7 of Charge III reflected an unreasonable multiplication of charges.[6] Before announcing his findings on the record, the military judge correctly agreed with trial counsel and defense counsel that Specification 6 of Charge III (driving in an improper direction on a one-way roadway or highway) and Specification 7 of Charge III (failing to stop at a posted stop sign) were classified under Virginia law as non-criminal traffic infractions. *See* Va.Code Ann. § 46.2–113.

At the time of appellant's trial, Va.Code Ann. § 46.2–113 provided:

It shall be unlawful for any person to violate any of the provisions of this title [46.2 Motor Vehicles], or any regulation adopted pursuant to this title, or local ordinances adopted pursuant to the authority

granted in § 46.2–1300. Unless otherwise stated, these violations shall constitute traffic infractions punishable by a fine of not more than $200.[7]

Under Va.Code Ann. § 18.2–8 ("Felonies, misdemeanors and traffic infractions defined"), "[t]raffic infractions are violations of public order as defined in § 46.2–100 and not deemed to be criminal in nature." Furthermore, Va.Code Ann. § 46.2–100 ("Definitions") provides: " *'Traffic infraction'* means a violation of law punishable as provided in § 46.2–113, which is neither a felony nor a misdemeanor." Because the Virginia Code defines the traffic offenses alleged in Specifications 6 and 7 of Charge III as non-criminal, we hold the government was precluded from assimilating those offenses under the ACA.

Despite the non-criminal nature of the traffic offenses in Specifications 6 and 7 of Charge III, the military judge nevertheless accepted appellant's guilty pleas to these specifications as provident. Holding that non-criminal traffic offenses cannot be assimilated into federal law under the ACA, we also hold the military judge erred by finding appellant's pleas provident to Specifications 6 and 7 of Charge III.[8] However, because we find appellant's misconduct—in driving the wrong direction on a one-way roadway (Spec-

State Traffic Laws on DoD Installations ... Policy"). *See also* 32 C.F.R. §§ 210.1 and 210.2 ("Purpose ... Applicability and scope"); 32 C.F.R. § 634.25 ("Part 634—Motor Vehicle Traffic Supervision ... Installation traffic codes"); Dep't of Def. Dir. 5525.4, Enforcement of the State Traffic Laws on DoD Installations (2 Nov. 1981) (incorporating C1, 31 Oct. 1986); Dep't of Def. Instr. 6055.4, DoD Traffic Safety Program (20 July 1999); *Boyer*, 935 F.Supp. at 1141–42 (cited with approval in *Doyle*, 237 F.3d at 953, and discussing the " 'criminalization' of [a state's] rules of the road that are non-criminal under state law" in accordance with 40 U.S.C. § 318 (now 40 U.S.C. § 1315) and 32 C.F.R. § 210.3, and the applicable punishment).

5. On 21 August 2002, 40 U.S.C. § 318c was incorporated into 40 U.S.C. § 1315 ("Law enforcement authority of Secretary of Homeland Security for protection of public property"). Section 1315(c)(2) ("Penalties") now provides: "A person violating a regulation prescribed under [40 U.S.C. § 1315(c)(1)] shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both."

6. The military judge did not find Specifications 5, 6, and 7 of Charge III reflected an unreasonable multiplication of charges for findings purposes, but did consider them one offense for sentencing. Because we find Specifications 6 and 7 of Charge III reflect an improper assimilation of non-criminal traffic offenses into federal law, we do not formally decide whether these specifications would otherwise constitute an unreasonable multiplication of charges.

7. On 22 March 2003, more than one month after appellant's trial, the penalty in Va.Code Ann. § 46.2–113 was increased to "a fine of not more than that provided for a Class 4 misdemeanor under § 18.2–11," or no more than $250.00.

8. However, driving with a suspended license in violation of Va.Code Ann. § 46.2–301 (Specifications 2 and 3 of Charge III) is a Class 1 misdemeanor. Class 1 misdemeanors are punishable by "confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both." Va.Code Ann. § 18.2–11(a). Therefore, though relatively minor, these offenses can be assimilated under the ACA.

ification 6) and failing to stop at a posted stop sign (Specification 7)—constituted part of his reckless driving, we will consolidate this misconduct in Specification 5 of Charge III.

### Preempted Criminal Traffic Offenses

Based on the preemption doctrine,[9] appellate counsel agree the government improperly assimilated state law reckless driving offenses (Specifications 4 and 5 of Charge III) because those offenses are preempted by Article 111, UCMJ ("Drunken or reckless operation of a vehicle, aircraft, or vessel"). We agree. Appellate government counsel urge us to affirm violations of Article 111, UCMJ, under the closely-related offense doctrine. We accept the government's suggestion because we find appellant's providence inquiry supports convictions for two violations of Article 111, UCMJ.

■ During a providence inquiry, if an accused clearly admits—based on his factual declarations to the military judge—that he or she is guilty of a "different but closely-related offense having the same [or a lesser] maximum punishment, we may treat that accused's pleas of guilty as provident." *United States v. Epps,* 25 M.J. 319, 323 (C.M.A.1987) (affirming guilty plea to larceny because the providence inquiry established guilt to the closely-related offense of receiving stolen property); *see United States v. Hubbard,* 28 M.J. 203, 205–06 (C.M.A.1989) (stating same regarding same offenses); *United States v. Felty,* 12 M.J. 438, 442 (C.M.A.1982) (affirming guilty plea to escape from custody where providence inquiry demonstrated guilt to escape from confinement, and holding "technical variance between the offense alleged and that to which is established from an accused's own lips does not require setting aside the plea of guilty").[10]

9. *MCM,* Part IV, para. 60c(5)(a).

10. *United States v. Gonzalez,* 60 M.J. 572 (Army Ct.Crim.App.2004) (affirming closely-related offense of incapacitation for duty where guilty plea to drunk on duty was improvident); *United States v. Green,* 58 M.J. 855 (Army Ct.Crim.App. 2003) (affirming closely-related offense of dereliction of duty where guilty plea to violating a lawful general order was improvident); *United*

■ In Specification 4 of Charge III, the government charged appellant with reckless driving on a parking lot in violation of Va. Code Ann. § 46.2–864. This section states, in pertinent part:

A person shall be guilty of reckless driving who operates any motor vehicle at a speed or in a manner so as to endanger the life, limb, or property of any person:

1. On any driveway or premises of a church, school, recreational facility, or business property open to the public; or

2. On the premises of any industrial establishment providing parking space for customers, patrons, or employees....

In Specification 5 of Charge III, the government charged appellant with reckless driving on a roadway or highway in violation of Va.Code Ann. § 46.2–852. This section states, in pertinent part:

Irrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving.

Under Va.Code Ann. § 46.2–868, "Every person convicted of reckless driving ... shall be guilty of a Class 1 misdemeanor." Class 1 misdemeanors are punishable by "confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both." Va.Code Ann. § 18.2–11(a).

These state law reckless driving offenses are preempted by and closely-related to Article 111, UCMJ. Article 111 states, in pertinent part: "Any person subject to this chapter who ... operates or physically controls any vehicle ... in a reckless or wanton manner ... shall be punished as a court-martial may direct." UCMJ art. 111. The elements of this offense are:

*States v. Rhodes,* 47 M.J. 790, 791 (Army Ct. Crim.App.1998) (affirming closely-related offense of resisting apprehension by civilian police officers under Article 134 where guilty plea to violating Article 95 was improvident because "civilian police officers not affiliated with the military for non-military offenses ... [and] not acting as agents of the military during the apprehension").

(1) That the accused was operating or in physical control of a vehicle . . . and

(2) That while operating or in physical control of a vehicle . . . , the accused:

(a) did so in a wanton or reckless[11] manner. . . .

*MCM*, Part IV, para. 35b. The maximum punishment for a violation of Article 111 is a bad-conduct discharge, forfeiture of all pay and allowances, and confinement for six months. *Id.* at para. 35e(2).[12]

■ We conclude appellant's providence inquiry and his stipulation of fact support findings of guilty to two violations of the closely-related reckless driving offense codified in Article 111, UCMJ. First, we are satisfied that the specifications alleging violations of Virginia's reckless driving laws put appellant on notice that he could be convicted under Article 111 because the elements of both are substantially the same.

Second, appellant's declarations to the military judge, and the stipulation of fact, establish the elements of reckless driving under Article 111. Appellant admitted to the military judge that when he attempted to re-enter Fort Eustis on 11 January 2003, a MP recognized and detained him to check his driver's license status. During this check, appellant fled the scene without permission by speeding down Washington Boulevard, which prompted a police pursuit. During the pursuit, appellant avoided a police roadblock, sped through a traffic circle, drove the wrong way on Washington Boulevard, ran several stop signs, jumped a curb and roadway median, crossed over railroad tracks, struck a MP vehicle, sped through the Post Exchange, Shopette, and bowling alley parking lots, and almost struck several pedestrians.

Third, because the elements of Va.Code Ann. §§ 46.2–852 and 46.2–864 and Article 111 are substantially the same, we find these offenses "closely related." Furthermore, under the circumstances of this case, we consider the maximum punishment for a violation of Article 111 to be less than that for violations of Va.Code Ann. §§ 46.2–852 and 46.2–864. Under the foregoing analysis we will, therefore, modify Specifications 4 and 5 of Charge III to reflect violations of Article 111, UCMJ.[13]

## CONCLUSION

We find appellant's pleas of guilty to Specifications 4 and 5 of Charge III provident as violations of Article 111, UCMJ. Specification 4 of Charge III is amended to read as follows:

In that Private E1 Nathaniel L. Brooks, U.S. Army, did, at Fort Eustis, Virginia, on or about 11 January 2003, drive a motor vehicle in the Fort Eustis Post Exchange and Shopette parking lots in a reckless manner by traveling at a high rate of speed through the parking lots and in a manner so as to endanger the life, limb, and property of other persons, in an at-

---

11. The *MCM* defines reckless operation of a motor vehicle as that type of operation which:

exhibits a culpable disregard of foreseeable consequences to others from the act or omission involved. Recklessness is not determined solely by reason of the happening of an injury, or the invasion of the rights of another, nor by proof alone of excessive speed or erratic operation, but all these factors may be admissible and relevant as bearing upon the ultimate question: whether, under all the circumstances, the accused's manner of operation or physical control of the vehicle . . . was of that heedless nature which made it actually or imminently dangerous to the occupants, or to the rights or safety of others. It is operating or physically controlling a vehicle . . . with such a high degree of negligence that if death were caused, the accused would have committed involuntary manslaughter, at least.

*MCM*, Part IV, para. 35c(7).

12. If personal injury results from operating a motor vehicle in a reckless manner, the maximum punishment is a dishonorable discharge, forfeiture of all pay and allowances, and confinement for eighteen months. *Id.* at para. 35e(1).

13. Under the circumstances of this case, we do not find that Specifications 4 and 5 of Charge III reflect an unreasonable multiplication of charges. These offenses are qualitatively different, require proof of different elements, and are directed at separate criminal acts. Furthermore, these offenses do not exaggerate the depth and breadth of appellant's criminality, and we find no evidence of prosecutorial overreaching or abuse in the charging decision. Specification 4 specifically targets appellant's reckless driving in parking lots, while Specification 5 specifically targets his reckless driving on public roadways and highways.

tempt to flee from apprehension, in violation of Article 111, UCMJ.

The court orders that Specifications 6 and 7 of Charge III be merged into modified Specification 5 of Charge III, to read as follows:

In that Private E1 Nathaniel L. Brooks, U.S. Army, did, at Fort Eustis, Virginia, on or about 11 January 2003, drive a motor vehicle on the highways of Fort Eustis in a reckless manner by driving at an excessive speed, driving in the improper direction on a highway, failing to stop at a posted stop sign, driving over a curb, striking a military police vehicle, and improperly crossing a median and railroad tracks, while attempting to flee from apprehension, and at a speed and in a manner so as to endanger the life, limb, and property of other persons, in violation of Article 111, UCMJ.

The findings of guilty to amended Specifications 4 and 5 of Charge III are affirmed.

The findings of guilty to Specifications 6 and 7 of Charge III are set aside and those specifications are dismissed. The remaining findings of guilty are affirmed. We have considered the remaining assignments of error and find them to be without merit. Reassessing the sentence on the basis of the errors noted, the entire record, and applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the court affirms the sentence. Appellant will be credited with one additional day of confinement credit against the sentence to confinement.

Senior Judge SCHENCK and Judge ZOLPER concur.