# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

**Jacob W. DECKER**
**Fireman (E-3), U.S. Coast Guard**

**CGCMG 0336**
**Docket No. 1436**

**13 July 2017**

General Court-Martial convened by Commander, Force Readiness Command.  Tried at Alameda, California, on 16 June and 24-29 August 2015.

|  |  |
|---|---|
| Military Judge: | CAPT Gary E. Felicetti, USCG |
| Trial Counsel: | LT Emily C. Miletello, USCGR |
| Assistant Trial Counsel: | LT Geralyn L. van de Krol, USCG |
|  | LCDR Jeremy M. Greenwood, USCG |
| Defense Counsel: | Jon W. Shelburne, Esq. |
| Assistant Defense Counsel: | LT Bradley F. Meyer, JAGC, USN |
| Appellate Defense Counsel: | Frank J. Spinner, Esq. |
|  | LT Philip A. Jones, USCGR |
|  | LT Jason W. Roberts, USCGR |
| Appellate Government Counsel: | LT Tereza Z. Ohley, USCGR |
|  | LT Sharyl L. Pels, USCGR |

### BEFORE
### McCLELLAND, BRUCE & JUDGE
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial composed of members, including enlisted members.  Contrary to his pleas, Appellant was convicted of two specifications of sexual assault, in violation of Article 120, Uniform Code of Military Justice (UCMJ).  The court sentenced Appellant to confinement for one year, reduction to E-1, and dishonorable discharge.  The Convening Authority approved the sentence.

Before this Court, Appellant has assigned the following errors:

I. The evidence is factually and legally insufficient to support findings of guilty to Specifications 1 and 2 of Charge I.

II. Appellant's conviction of two specifications of sexual assault for one sexual act is an unreasonable multiplication of charges.

III. The military judge's instruction to the members, "If based on your consideration of the evidence you are firmly convinced of the truth of each and every element, you *must* find the accused guilty", was plain error.

We summarily reject the third issue on the strength of *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017). We discuss the other issues and affirm.

## Sufficiency of evidence

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, a reasonable factfinder could have found the elements of the offense beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this Court is convinced of Appellant's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325; *see* Article 66(c), UCMJ.

We conclude that the evidence is legally sufficient, and we are convinced beyond a reasonable doubt of Appellant's guilt.

## Unreasonable multiplication of charges

The leading case on unreasonable multiplication of charges is *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001).

Appellant was found guilty of a specification alleging intercourse with a woman when she "was incapable of consenting to the sexual act due to impairment by a drug, intoxicant or other similar substance, and that condition was known or reasonably should have been known by the accused." He was also found guilty of a specification alleging intercourse with the same

woman on the same date when she "was unconscious or otherwise unaware that the sexual act was occurring, and that condition was known or reasonably should have been known by the accused." Based on the evidence, if there were two separate acts, they occurred during a certain period of time in a vehicle.

At trial, before the court was assembled, the defense sought to obtain or confirm a ruling that the specifications were charged in the alternative and that in the event of multiple guilty findings, "unreasonable multiplication" would be addressed before sentencing. (R. at 42.) The Government acknowledged, "Currently, they're charged in the alternative," but, foreshadowing future trouble, asserted a belief "that he could potentially be found guilty of all" specifications. (*Id.*) The military judge acknowledged prior discussion that there were alternative theories. He went on, "But I guess from a technical perspective, certainly it's possible to do one without the other or both at the same time." (R. at 43.) He did not provide further clarity, merely noting that the issue was "pending for further development at the point of sentencing, if we get to sentencing." (*Id.*)

After findings it was agreed by the parties that the maximum sentence was thirty years, the maximum for a single specification of sexual assault. (R. at 1237.) However, the defense took the position, invoking unreasonable multiplication of charges, that the two specifications were alternatives and Appellant could not be guilty of both. (R. at 1241-42.) Hence the defense sought dismissal of one or the other specification before sentencing. (R. at 1243.) The Government's position was that it was factually and legally possible that two separate offenses occurred. (R. at 1242-43.) The military judge opined that the remedy for the unreasonable multiplication of charges was to adjust the maximum sentence, which had been agreed to. (R. at 1242.) He declined to dismiss either of the specifications. (R. at 1243.)

On appeal, the defense argues that "although the military judge mitigated prejudice by merging the charges with respect to the maximum punishment, it is not clear the members did not give FN Decker an increased punishment based on the existence of two convictions." (Assignments of Error and Brief at 10.)

There is no basis in the trial transcript for the notion that the military judge actually "merged" the two specifications. The term "merge" or "merger" does not appear. Nor was a merged specification ever set forth, at trial or in the promulgating order. Instead, the military judge simply applied the maximum sentence for a single specification, declaring it to be the maximum sentence for the case.

We reject the defense proposition that the members might have sentenced Appellant to an increased punishment based on the existence of two convictions. It is the height of unfounded speculation to think the members might have increased the punishment compared to what they would have adjudged if there had been a single specification.

We note that there is no evidence in the record to suggest that two acts of intercourse took place. Certainly it is logically possible that a person could be incapable of consenting to a sexual act because of being unconscious or otherwise unaware, all because of impairment by a drug or intoxicant. It is also logically possible that a person could be incapable of consenting to a sexual act because of impairment by a drug or intoxicant at one point in time and, at another point during the same act of sexual intercourse, be unconscious or otherwise unaware that the sexual act was occurring. Hence a finding of guilty of both specifications would be proper even if only one event of sexual intercourse occurred, and the military judge's refusal to dismiss one of the specifications was not error. He was not requested to merge the two specifications; he could have done so *sua sponte*, but it was not plain error not to do so. However, we consider the maintenance of two specifications unreasonable. To eliminate any possible prejudice from the appearance of two specifications in the promulgating order, we will merge them.[1]

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the two specifications are merged into a single specification, to read as follows[2]:

In that FN Jacob Decker, U.S. Coast Guard, on active duty, did, at or near Petaluma, California, on or about 4 January 2014, commit a sexual act upon OS3 [CG], to wit:

---

[1] In initiating this remedy, we follow the examples of our sister courts in the cases of *United States v. Brooks*, 64 M.J. 587, 595 (A.Ct.Crim.App. 2006); *United States v. Hennis*, 40 M.J. 865, 870-71 (A.F.C.M.R. 1994); and *United States v. Carter*, 23 M.J. 683, 686 (N.M.C.M.R. 1986).

[2] The initials "CG" are substituted for the name of the victim for the purposes of this opinion.

inserting his penis into the vulva of OS3 [CG] when OS3 [CG] was (1) incapable of consenting to the sexual act due to impairment by a drug, intoxicant or other similar substance, and that condition was known or reasonably should have been known by the accused; and (2) unconscious or otherwise unaware that the sexual act was occurring, and that condition was known or reasonably should have been known by the accused.

The findings of guilty of the charge and the foregoing single specification and the sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, those findings of guilty and the sentence, as approved below, are affirmed. A new promulgating order shall be issued showing the single merged specification.

Judge JUDGE concurs.

BRUCE, Judge (dissenting):

This is a vexing case; the kind that sexual assault prevention training seeks to avoid. I agree with the majority's resolution of Assignment of Error III, and I agree that the evidence presented in this case is legally sufficient to support findings of guilty to the specifications of Charge I and to Charge I. I would disapprove the findings of guilty to the specifications of Charge I and to Charge I, because I have a reasonable doubt that CG was incapable of consenting to the sexual act due to impairment by alcohol or any other substance; or unconscious, or otherwise unaware that the alleged sexual act was occurring. Considering all of the evidence presented, it is just as likely that CG was conscious, aware, and capable of consenting, but does not remember because of an alcohol-induced blackout.

### Factual sufficiency

There is evidence that CG drank a large amount of alcohol, was significantly impaired by alcohol, and remembers little of what occurred around the time that Appellant engaged in sexual intercourse with her. (R. at 633-640, 653-659, for example.) What CG does remember (R. at 657) corroborates Appellant's version of events, which was introduced by trial counsel through the testimony of a Coast Guard Investigative Service Special Agent (R. at 710-817). CG testified that she did not remember, recall, or recollect, much of what happened after leaving the Hideaway bar. (R. at 636-640.) While it is possible to infer from CG's testimony that she may have been unconscious, or otherwise unaware, during the sexual intercourse, she never actually

testified that she was unconscious or otherwise unaware. The only testimony that CG was actually observed unconscious about the time that Appellant engaged in sexual intercourse with her, was testimony of the Special Agent that Appellant said she appeared to be asleep or passed out later when Appellant and CG arrived back to her barracks. (R. at 751.)

The Special Agent testified that Appellant stated that he snapped his fingers after CG requested intercourse because she was losing focus. (R. at 739.) However, after that, Appellant stated that CG asked if Appellant had a condom, told Appellant not to ejaculate in her, and spit on her hand to lubricate herself. (R. at 740-742.) CG testified that she remembers asking about a condom. (R. at 657.) That timeline suggests to me that although CG may have momentarily been going to sleep prior to the intercourse, she may have revived prior to the intercourse. The discussion about a condom and ejaculation is the kind of discussion that would typically occur prior to intercourse, but it is described as happening after the finger snapping. The spitting and lubrication also happened after the finger snapping, according to the Special Agent's trial testimony.

According to Appellant's version of events, CG asked Appellant three times shortly afterward if he had intercourse with her. (R. at 751-753.) This could be evidence she was incapable of consenting, unconscious, or otherwise unaware, but it could also be the result of blackout. The expert testimony at trial about blackout was that during a blackout memories are not stored away in the brain. (R. at 1018-19.) That means that if CG was blacked-out when the intercourse occurred, she would have no memory of it, even shortly after the fact. The fact that CG asked Appellant whether they had sexual intercourse is just as consistent with her being conscious, aware, and capable of consenting, but in an alcohol-induced blackout, as it is consistent with her being incapable of consenting, unconscious, or otherwise unaware of the sexual act occurring.

The Discussion following Rule for Courts-Martial 918(c), Manual for Courts-Martial, United States (2012 ed.), explains reasonable doubt as follows: [3]

---

[3] This extract is identical in the 2012 and 2016 editions of the Manual for Courts-Martial.

A reasonable doubt is a doubt based on reason and common sense. A reasonable doubt is not mere conjecture; it is an honest, conscientious doubt suggested by the evidence, or lack of it, in the case. An absolute or mathematical certainty is not required. The rule as to reasonable doubt extends to every element of the offense. It is not necessary that each particular fact advanced by the prosecution which is not an element be proved beyond a reasonable doubt.

The military judge gave the following instructions on reasonable doubt in this case:

Reasonable doubt. Reasonable doubt is not a fanciful or imaginative doubt or conjecture, but is an honest, conscientious doubt suggested by the material evidence or lack of it in the case. It is a genuine misgiving caused by insufficiency of proof of guilt. There are very few things in this world that we know with absolute certainty. And in criminal cases, the law does not require proof that overcomes every possible doubt. The proof must be such as to exclude not every hypothesis or possibility of innocence, but rather to exclude every fair and rational hypothesis except that of guilt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the accused (sic) guilt.

The rule as to reasonable doubt extends to each element of the offense, although each particular fact advanced by the prosecution that does not amount to an element need not be established beyond a reasonable doubt. If based on your consideration of the evidence you are firmly convinced of the truth of each and every element, you must find the accused guilty. If, on the other hand, you think there is a real possibility that the accused is not guilty, you must give him the benefit of the doubt and find him not guilty.

(R. at 1157-58.)

The majority opinion states the test for factual sufficiency above, slip op. at 2. Weighing all the evidence at trial, and recognizing that I did not see or hear the witnesses, I have a reasonable doubt. If it is just as likely that CG was conscious, aware, and capable of consenting when the sexual acts occurred, but she does not remember because of an alcohol-induced blackout, as it is likely that she was incapable of consenting, unconscious, or otherwise unaware, the evidence does not meet the standard for a preponderance of the evidence, let alone proof beyond a reasonable doubt.

The evidence does not preclude the real possibility that CG was conscious, aware, and capable of consenting when the sexual acts occurred. Because I have a reasonable doubt that CG

was incapable of consenting, unconscious, or otherwise unaware of the sexual acts occurring, I would disapprove the findings.

### Deficiencies in Specification 2, and the merged specification

In Specification 2 of Charge I, the Appellant was charged with sexual assault as follows:

SPECIFICATION 2: In that [Appellant], U.S. Coast Guard, on active duty, did, at or near Petaluma, California, on or about 4 January 2014, commit a sexual act upon OS3 [CG], to wit: inserting his penis into the vulva of OS3 [CG] when OS3 [CG] was unconscious or otherwise unaware that the sexual act was occurring, and that condition was known or reasonably should have been known by the accused.

This specification does not conform to the sample specification in the Manual for Courts-Martial with respect to alleging that the victim was otherwise unaware. The sample specification includes language that the victim was "(unaware the sexual act was occurring due to _____)." Manual for Courts-Martial, United States (2016 ed.), Part IV, ¶ 45f.(3)(e). The specification in this case lacks the "due to" language or any further explanation of how the victim was allegedly unaware.

For purposes of alleging a sexual assault under Article 120(b)(2), UCMJ, it appears that the "otherwise unaware that the sexual assault is occurring" language is a kind of catch all for situations where the evidence may not clearly establish that the victim was asleep or unconscious when the sexual act occurred. As such, it has the potential to include any number of states of unawareness, other than being asleep or unconscious. Therefore, to provide fair notice to an accused of what he must defend against, and to protect the accused from double jeopardy, a specification alleging that the victim was otherwise unaware must inform the accused how the government intends to prove that the victim was otherwise unaware. *United States v. Sell*, 11 C.M.R. 202, 206 (1953); *United States v. Sutton*, 48 C.M.R. 609, 610 (ACMR 1974).

In this case, all of the evidence presented tended to show that CG was extremely intoxicated by alcohol when the sexual act occurred. The expert testimony specifically related to the effects of alcohol on the ability to perceive and consent. There was no expert testimony about unconsciousness or states of unawareness unrelated to alcohol. And trial counsel never expressly presented a basis on which the members should find that CG was in a state of

unawareness that the sexual act was occurring, aside from being unconscious or incapable of consenting due to impairment by alcohol.  Since nothing at trial cured the deficiencies in the specification alleging that the victim was otherwise unaware that the sexual act was occurring, I would find that the specification failed to state an offense in that regard.  On that basis, I would omit the language concerning otherwise unaware that the sexual act was occurring from the merged specification.

Additionally, although it appears that the various theories of liability in Article 120(b)(2), asleep, unconscious, or otherwise unaware that the sexual act was occurring, can properly be alleged in one specification, concerning one transaction, they should be alleged in the conjunctive.  *See* COL R. Peter Masterton, *A View from the Bench: prohibition on Disjunctive Charging Using "Or"*, DA Pamphlet 27-50-468 (Army Lawyer, May 2012) 27.  Accordingly, in the merged specification, I would join "unconscious" and "otherwise unaware that the sexual act was occurring" with "and" instead of "or".

For the Court,

L. I. McClelland
Chief Judge